## Case No. 3,653.

### DAVIS v. STEVENS.

[17 Blatchf. 259; 20 Alb. Law J. 490; 25 Int. Rev. Rec. 378; 8 Reporter, 710; 2 Nat. Bank Cas. (Browne) 158; 14 Am. Law Rev. 84; 36 Leg. Int. 462.] [1]

Circuit Court, S. D. New York.  Nov. Term, 1879.

NATIONAL BANKS—WHO ARE SHAREHOLDERS—PRE-TENDED TRANSFERS—INDIVIDUAL LIABILITY.

A purchaser of stock in a national bank, who, to conceal his ownership and escape individual responsibility, causes it to be transferred to another person pecuniarily irresponsible, is, so long as he remains the actual owner, a shareholder, within the meaning of section 12 of the act of June 3, 1864 (13 Stat. 102), now sections 5139 and 5151 of the Revised Statutes of the United States, and liable as such.

[Applied in Case v. Small, 10 Fed. 724. Cited in Bowden v. Johnson, 107 U. S. 262, 2 Sup. Ct. 255; Irons v. Manufacturers' Nat. Bank, 21 Fed. 198; Anderson v. Philadelphia Warehouse Co., 4 Fed. 130.]

[This is an action by Theodore M. Davis, receiver of the Ocean National Bank, in the city of New York, against Calvin A. Stevens, as executor of Calvin Stevens, deceased. The district court directed a verdict in favor of defendant; and, to review the judgment entered thereon, plaintiff sued out this writ of error.]

John E. Parsons, for plaintiff in error.
C. W. Bangs, for defendant in error.

WAITE, Circuit Justice.  This was a suit at law by the receiver of an insolvent national bank to enforce the individual liability of an alleged shareholder, under section 5151 of the Revised Statutes. The bank failed December 12th, 1871, and it is conceded that Calvin Stevens, the decedent, did not then appear on the books as a shareholder, and had not appeared as such since October 29th, 1870. On that day one hundred and seventeen shares stood in his name, which he caused to be transferred to one Elston, an irresponsible person, and a porter in the office of his New York broker. At the time of this transfer, so far as appears from the evidence, there was no suspicion of the insolvency of the bank, and it remained in good credit for more than a year afterwards. Subsequently, Stevens made other purchases of the stock of the bank and sometimes made sales. His purchases were put to the credit of Elston on the stock books, and, to meet his sales, he, acting as the agent of Elston, under a power of attorney for that purpose, caused the necessary transfers to be made from the same account. On the 22d of November, 1871, there stood to the credit of Elston, on the books, one hundred and sixty-one shares, for which a formal certificate was issued in his name, and delivered to Stevens, as his agent. It did not appear, from the testimony, that any of the

shares which once stood in Stevens' name were included in this certificate. The account on the books remained unchanged from that time until the failure.

Upon this state of facts, the court below directed a verdict in favor of the defendant; and the single question now presented is, whether that was right. For all the purposes of this inquiry it must be assumed, that, as between Stevens and Elston, Stevens was the real owner of the stock. Clearly, the evidence tended to prove that fact, and there was enough to make it wrong to take the question from the jury. There is no pretense that Elston did not give his assent to the transfer to him on the books. This made him liable as a shareholder. Upton v. Tribilcock, 91 U. S. 48; Webster v. Upton, Id. 65; Pullman v. Upton, 96 U. S. 328. The point to be decided now is, whether, in an action at law, by a receiver of the bank, the real owner of stock in a national bank, standing, by his procurement, in the name of another, and never having been in his own name on the books, can be charged, as a shareholder, with the statutory liability for debts.

The banking act of June 3, 1864 (13 Stat. 106, § 6), now Rev. St. § 5134, provides, that the certificate of organization shall specify, among other things, "the names and places of residence of the shareholders, and the number of shares held by each of them." Section 12 of the original act is as follows: "That the capital stock of any association formed under this act shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association; and every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares, and no change shall be made in the articles of association by which the rights, remedies or security of the existing creditors of the association shall be impaired. The shareholders of each association formed under the provisions of this act * * * shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares; * * *" In the Revised Statutes these provisions are separated and reproduced as sections 5139 and 5151, but, for the purposes of construction, they are to be considered together. Rev. St. § 5600. Section 63 of the original act (now Rev. St. § 5152) provides, "that persons holding stock as executors, administrators, guardians and trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 8 Reporter, 710, contains only a partial report.]

same extent as the testator, intestate, ward, or person interested in said trust funds would be, if they were respectively living and competent to act and hold the stock in their own names." Section 40 (now Rev. St. § 5210) requires, that a full and correct list of the names and residences of all the shareholders shall be at all times kept in the office where the business of the association is transacted, subject to the inspection of shareholders and creditors, and that a verified copy of this list must be transmitted to the comptroller of the currency.

Under these provisions of the law, it is contended, that the registered shareholders alone can be charged with the statutory liability, and that an assignee of stock does not make himself responsible unless he accepts an actual transfer in his own name on the books. As has just been seen, the registered holder is liable. By holding himself out to the world as owner, as he does when he permits his name to appear to that effect on the books kept for the information of shareholders and creditors, he estops himself from denying that he is in fact what he represents himself to be. The question still remains, however, whether the person for whom the registered owner holds the stock, if actually the owner, may not also be liable.

The supreme court, at its last term, held, in National Bank v. Case, 99 U. S. 628, that if a registered owner transferred his stock in a failing corporation to an irresponsible person, for the mere purpose of escaping liability, or if his transfer was colorable only, the transaction was void as against creditors. At the same time, in Case v. Marchand [99 U. S.],—not reported,—an effort was made to charge Marchand with liability as the real owner of stock standing in the name of one Lubie, the allegation being that Marchand, having bought the stock from one Keenan, caused it to be transferred to Lubie, for the purpose of concealing his ownership and avoiding liability under the act of congress. The court decided the case on the ground that the evidence was not sufficient to show the actual ownership of Marchand, but there is nowhere an intimation that, if the facts had been as alleged, the action might not be sustained.

The present case shows that Stevens bought the stock from registered owners, and took assignments of their certificates, with authority to complete the transfers on the books. As between Stevens and the vendors this made Stevens the owner. At that time the vendors could have registered their transfers, and thus, while relieving themselves from liability, charged Stevens. Webster v. Upton, 91 U. S. 65. If Stevens had omitted to register the transfer, and on that account his vendors had been compelled, as

registered owners, to respond to their statutory liabilities for debts, I cannot think there would be a doubt of their right to call upon him to reimburse them for the money so paid. The reason is obvious. While the vendors were the registered owners, Stevens was the actual "shareholder," and the money paid by the vendors would have been for his use and recoverable from him as such.

Stevens, by his transfers on the books, undoubtedly released his vendors from all future liability, because, as to them, the transfers were "out and out," in the language of the English cases, and not colorable only. They retained no interest whatever, and Elston, the registered transferee, although pecuniarily irresponsible, was capable in law of assuming the obligations of a shareholder. As between Stevens and Elston, however, Stevens was the real owner, and Elston his authorized representative in the bank. As such representative, Elston could vote the stock at elections and receive and receipt for dividends. So, too, he could sell and transfer the stock on the books, and such sale and transfer to a bona fide purchaser would pass the title, free from any claim of Stevens. Neither would the bank, under ordinary circumstances, be liable to Stevens for permitting the transfer to be made. So far as Elston was concerned, the transfer to him was colorable only; and it is apparent that the only object Stevens had in causing it to be made was to conceal his ownership, and thus, if possible, escape all statutory liability. Such being the case, I am unable to see how he can occupy any different position from what he would if the stock had been taken directly from his own name on the books and put in that of Elston. He is still the real owner, with Elston as his agent specially authorized to hold for him the legal title. Every principal is responsible for the obligations of his agency. The debt of the agent is the debt of the principal, and always recoverable from the principal. By the rules of law which govern the relation of principal and agent, the registry on the books in the name of Elston was, as between Stevens and Elston, in legal effect, the same as a registry in the name of Stevens. The obligations which Elston assumed by reason of such registry were the obligations of Stevens.

Assuming, then, as I must, for the purposes of this case, that the facts were as they are claimed by the plaintiff to have been, I cannot reach any other conclusion than that Stevens, the decedent, was, in law, a "shareholder" of the bank at the time of its failure, and, as such, liable in this action. It was error, therefore, to direct a verdict for the defendant. The judgment of the district court is reversed, and the cause remanded for a new trial.