## No. 7984.

### LESASSIER & BINDER VS. SAMUEL H. KENNEDY.

A share-owner in a National Bank has the absolute right, while it is a going concern, to make a *bona fide* and actual sale and transfer of his shares to any person capable in law of purchasing the same and of assuming the seller's liabilities in respect thereto, fraud being absent from the transaction, and the seller for his own protection against creditors of the bank in case of insolvency, may compel the buyer to register the transfer in the bank-book, or do it himself.

Under the provisions of the National Banking Act, the Bank is not legally disabled from prosecuting the business of banking until she is protested for failure to redeem her circulating notes. Until then the Bank is · a going concern.'

The object of that statute, when it charges stockholders with liability in case of the Bank's insolvency, is to get at the real owner of the shares, and the courts in construing it uncover all his disguises, so that if his name has never been on the transfer-book, and his stock stands in the name of another by his procurement, he will yet be chargeable with the statutory liability.

But if his sale was real, not made to escape liability, not to an irresponsible person, not collusive or fraudulent, and made while the bank was going, he will not be chargeable under the statute.

A PPEAL from the Fifth District Court for the Parish of Orleans. *Rogers,* J.

---

*Miller, Finney & Miller* for Plaintiffs and Appellees:

The sale of shares of stock in a corporation is perfect as between the vendor and the purchaser, by the agreement to sell followed by payment of the price, delivery of certificates, and by the vendor signing the transfer book of the corporation, so as to enable the purchaser to fill up his name as transferee in the transfer book, and such sale puts upon the purchaser all the risks and ownership accruing after such sale. Angell & Ames on Corporations, secs. 353, 354.

But under the National Banking Act, no one is deemed an owner of stock unless *bona fide* transferred to him on the transfer book of the bank; neither colorable or incomplete transfers are recognized, and when the bank fails the liability imposed by that act on shareholders for the debts of the bank will be exacted from all who stand as registered owners, disregarding all fictitious transfers made to ·evade liability, and irrespective of

Lesassier & Binder vs. Kennedy.

any actual sale not accompanied with a completed transfer on the transfer book. Thompson on Shareholders, secs. 215, 217; National Bank in case. 99th U. S. 632; Revised Statutes U. S. 5151.

But if an actual sale is made of shares of stock in a National Bank, the price paid, certificates delivered, and the vendor signs the transfer book, in blank, to enable the purchaser or his broker to fill up the name of the purchaser, it must be deemed to be in contemplation of the parties, and as part of their contract, that the blank in the transfer shall be promptly filled up with the purchaser's name, so as to subject the purchaser and not his vendor to the liabilities of ownership attaching to shareholders under the National Banking Act arising after such sale; therefore, it is a breach of the contract and a wrong to the vendor for the purchaser of stock to withhold his own name from the transfer book and leave stock he has purchased still standing in the name of the vendor, so as to subject the vendor to such liabilities accruing after the vendor has sold and parted with all control over the stock.

Hence, it after such actual sale, delivery and signing the transfer book, the purchaser does not fill up his name as transferee, and in consequence his vendor is made liable for the penalty imposed on shareholders for the debts of the bank accruing after the sale, the vendor in such case will be entitled to recover the amount of such liability paid by him, from the purchaser. Johnson vs. Underhill, 52 N. Y. 203; Walker vs. Bartlett, 32 English Law and Equity, p. 7th, Meeson P. W. p. 517.

Nor will it make any difference as to the liability of the purchaser to his vendor. that about a month after the purchase, during all of which time he has left the stock standing in the name of his vendor, the purchaser claims to have sold to another, whose name as owner is also withheld from the transfer book, nor because the party to whom the purchaser claims to have sold the stock makes a fictitious sale of the stock to an utterly irresponsible party, whose name is then placed in the transfer book by filling up his name as the transferrer in the blank transfer, the fictitious sale being made on the eve of and when the bank's failure was notorious, thus making it appear that the vendor in the *actual sale had made the fictitious sale*, for neither unregistered nor fictitious sales are noticed under the banking act, under which the liability of the vendor in the actual though unregistered sale is enforced; but that liability belonged to the purchaser under his contract with the vendors, and the purchaser cannot be permitted by withholding his name from the transfer book to thus cast his liability on the vendor.

## J. McConnell for Defendant and Appellant:

1. Under the provisions of the National Banking law, sections 5226, 5227 and 5228, after a banking institution is duly protested "for failure to pay its circulating notes," it cannot *thereafter* "prosecute the business of banking."

2. The protest thus made constitutes the legal evidence required by the law, of the *failure* of the institution, *prior to which date* the ordinary business transactions of the bank, *such as the transfer of stock* if made *bona fide*, will be legitimately done.

3. Where stock was transferred, *bona fide*, on the books of the bank. on the 15th of March. 1873, and the institution continued its ordinary business and was not protested until the 17th inst., or two days subsequently, "for failure to pay its circulating notes," and the evidence shows that sale and transfer of the stock was a real and *bona fide* transaction, the transfer will be valid; the transferee of the stock will be burdened with all the liabilities of ownership, and *the transferrer will be freed from liability in respect to such shares*.

4. In a case of *bona fide* transfer of stock on the books of a banking institution, prior to the protest for "failure to pay its circulating notes." and made in good faith, such transfer cannot be disregarded or ignored at the option of the receiver, who subsequently comes into possession of the assets of the bank. To allow him such option would impair the

*legal right* clearly and expressly given by the provisions of the National Banking law, to the holders of stock, to sell and transfer the same. Johnson, Receiver, vs. Laflin. in Thompson's National Bank Cases, p. 331.

5. Where a National Bank goes into liquidation, and a bill in equity is filed in the Circuit Court of the United States, in which all the stockholders are sued to contribute *pro rata* as such, and after two years' litigation and full and final hearing, the defense made by a stockholder thus sued is sustained, and the bill as to him dismissed, such judgment will be viewed as at least *prima facie* evidence that such stockholder is free from any and all liability as such.

6. When A purchases forty shares of bank stock from B, a broker, and pays him for it, not knowing from whom B, the broker, purchased it, and C, the seller, is paid by the broker's check, and C does not know nor inquire who the purchaser is, but treats with B, the broker, as such, there is no *privity of contract* in such sale between A and C.

7. The National Banking law requires actual transfer on the books of the bank from the transferrer to the transferee, before the former is freed from liability as a stockholder. The seller of stock, wishing to avoid liability, can at any time, by mandamus, compel the transfer on the books of the bank, and thus relieve himself from any contingent liability. When a broker is the seller and is shown to have full knowledge of the precarious condition of the stock sold, it is at least *contributory negligence* in him not to see that the transfer is completed at once.

---

The opinion of the Court was delivered by

MANNING, J.    On Feb. 24, 1873, the plaintiffs sold to defendant forty shares of the capital stock of the Crescent City National Bank for fifty dollars a share, and delivery was made.    The purchase was made through Feinour a broker.    The plaintiffs transferred the shares by signing the transfer on the proper book of the bank, leaving a blank for the name of the transferree.

Eleven days before, Feb. 13th, the London correspondents of the Bank had failed, and it had lost nearly the whole of its capital thereby.    This disaster had affected its credit instantly and seriously.    Its stock fell, and on March 14th payment of checks drawn upon it by its depositors was suspended, and on the 17th of the same month its circulating notes went to protest.

On March 15th. the defendant sold these forty shares of stock to Thomas A. Adams for eleven dollars a share, and at his request transferred them on the book of the bank to the porter of Adams, a negro employed by him at small wages.    On the bank transfer-book therefore, the only transaction appearing complete was a transfer from Lesassier & Binder to Morris Dyer, the name of Mr. Kennedy in pencil being only on the margin.

The Bank passed into liquidation, and its Receiver disregarded the apparent transfer to the irresponsible negro, and sued Lesassier & Binder for seventy per centum upon these shares as contribution, and

recovered $3,579.60 which they were compelled to pay. They now sue to recover that sum from the defendant.

Besides this suit at law of the Receiver against Lesassier & Binder, there was a bill in chancery filed by him against Kennedy to enforce liability against him, wherein the defence now set up was also presented there and was sustained, and the bill was dismissed.

The gravamen of the complaint is that the insertion of Dyer's name was a device of Kennedy to escape the liability which attached to him as actual owner of the stock; and that by his failure to insert his own name he caused the Receiver to pursue Lesassier & Binder. This assumes that the transfer from Kennedy was fictitious and colourable only, and that his intent in making it was to avoid responsibility for contributions. The point given to the examination of the defendant as a witness is an effort to extract from him admissions to sustain this assumption.

A mere transfer would not have released him from responsibility. If the purpose of the transfer was merely to avoid liability to the bank or its creditors, it would be deemed fraudulent in law and would be void. When a national bank is in a failing condition, a transfer of its shares, even though real and 'out and out,' but made to a person incapable of responding to liability and for the purpose of obtaining personal immunity, is void. National Bank v. Case, 9 Otto, 628. Even though the bank be not then in failing condition, but the stockholder knows there is good ground to apprehend its failure, and he colludes with an irresponsible person for the purpose of substituting the latter in his stead, and thus leaving no one able to respond to the liability imposed by the statute, such substitution will be void as to the bank, and he will be held liable. Bowden v. Johnson, 17 Otto, 251.

The object of the statute is to get at the real owner of the shares, and the courts in construing it uncover all his disguises, so that if his name has never been on the transfer-book and his stock stands in the name of another by his procurement, he will yet be chargeable as a stockholder with the statutory liabilities. Davis v. Stevens, 17 Blatchf. 259.

Now who was the real owner of these shares when the Receiver took charge of the insolvent bank? Certainly it was not the defendant. His sale to Mr. Adams was not only out and out, but was not made to an irresponsible person, nor for the purpose of escaping liability. He had bought on a falling market, eleven days after the disaster at London had toppled the stock, and it continued to go down until he was glad

to get rid of it at Mr. Adams' offer, who bought because he had confidence that the bank would recuperate. All the insignia of fraudulent transfer are wanting. There was no collusion, the transfer was for an agreed price which was paid, and the stock was not shuffled on to one less capable of answering calls on account of it than himself. Whatever may have been Mr. Adams' object in requesting the transfer to be put in the name of his porter, Mr. Kennedy had no thought of liability or design of escaping from it. This transaction was had eleven years ago. This was the first failure of a National Bank, and dealers in stocks of those institutions have since learned more than was then 'dreamt of in their philosophy.'

But this does not meet the issue in its entirety. It is urged with great force and plausibility that it was a wrongful act of defendant not to have filled the blank left on the transfer-book with his own name, and wrong again to fill it with the name of an irresponsible person, in consequence of which the plaintiffs have been condemned to pay contribution. In a sale of shares of the Hudson River Slate Company, where the New York statute required that transfers of stock must be entered upon the proper book, that court say:—it must be implied in such contract that the seller would execute and deliver a transfer to the buyer, and that he would accept and register such transfer with the further undertaking that he should indemnify the seller against calls which the seller might be called on to pay if, and so long as the transfer was not registered. Johnson v. Underhill, 52 N. Y. 203.

This obligation is equally binding upon every successive buyer. It is the custom to leave a blank for the name of the transferree, and it was because of this custom that the plaintiffs left the blank as above stated. This can only have been in contemplation of successive transfers and to facilitate them, so that if the final transferree is a responsible person, and the blank is filled with his name, the object is attained of having a stockholder answerable for calls. Kennedy's sale was to Adams who fulfilled all the requisites. Adams chose not to appear as transferree, but this did not relieve him from any liability which attached to him as transferree. Morris Dyer was his *alter ego*. It was through his instrumentality that a false name was inserted in the blank, and upon him rested the final undertaking to indemnify any one who might be called on to pay.

The proposition, says Dillon sitting as judge, may be considered as established that a shareowner in a National Bank, while it is a going

concern, has the absolute right in the absence of fraud to make a *bona fide* and actual sale and transfer of his shares at any time to any person capable in law of purchasing and holding the same, and of assuming the transferror's liabilities in respect thereto. * * * The seller, for his own protection against creditors of the bank in case of insolvency, may transfer the same on the books to the vendee, and may file a bill to compel the vendee to record the transfer. Thompson's Nat. Bank Cases, 343-4. The U. S. court in the chancery suit protected Kennedy because he had exercised this right of making a sale, which the court found to be *bona fide* and without taint of fraud.

But the plaintiffs insist that the defendant's sale lacked one of the elements mentioned in this last quoted authority, for that he sold after the Bank had failed. Payment of checks drawn upon this Bank by its depositors was refused on March 14th. The defendant sold on March 15th. The circulating notes of the Bank went to protest on the 17th. Under the provisions of the National Banking Act, a Bank is not legally disabled from prosecuting the business of banking until she is protested for failure to redeem her circulating notes. The date of the Bank's failure is thus fixed as March 17th., and until then it was 'a going concern,' and the sale of its shares was made by the defendant prior thereto.

It is the misfortune of the plaintiffs that they have been condemned to pay, in disregard of the principle that under the ruling of the chancery court protected the defendant, but we should only repeat the wrong they have suffered if we should condemn the defendant to suffer in like manner. One infliction of vicarious punishment is too much.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, and that there be now judgment in favor of the defendant rejecting the plaintiffs' demand and for costs.

### DISSENTING OPINION.

BERMUDEZ, C. J. When the plaintiffs sold their stock, it passed, through the broker, to his undisclosed principal, then in existence, who from that moment became the owner thereof and as such entitled to dispose of it.

The money which was used for the purchase, was refunded by the principal, to the broker, with his commission.

The plaintiffs had the right to expect, when they signed, in blank, the bank transfer-book, that the name of the real purchaser at that date, and which had been noted on the margin, would be written in ink in the body of the act.

The failure of plaintiffs to require such insertion, before or at the time of signature, did not relieve the real purchaser from the obligation of inserting his name or that of another purchaser of equal solidity, and did not authorize him, after disposing of the stock, to substitute to his own name and to that of his vendee, under a false date, the name of an individual who was a fiction and who did not even know that his name had thus been used. The fact that this was done by the first purchaser, at the instance of the second, Adams, who was that individual's agent, for the general purpose of dealing in stock, is not equivalent to *actual* knowledge in the constituent and does not shield the first purchaser from responsibility.

Had the defendant done that which he was bound to do, and should have done, that is, incorporated his name or at least that of his solvent vendee, the plaintiffs would not have been condemned by the Federal Court, as they have been. It is only because the defendant has purposely kept himself and his transferree from the roll of stockholders and, therefore, out of the reach of the incoming receivers, by putting in, without plaintiffs' knowledge, the name of an irresponsible party, at an improper date, that the plaintiffs had to pay and sustained consequent injury.

Relieving the defendant from all imputation of fraud, it cannot be well denied, that he is unquestionably liable for the consequences of the voluntary commission of an unauthorized and illegal *act*, which he should not have done and which, by his *fault* and his agency, has entailed on plaintiffs a disbursement of money which they would otherwise not have had to make.

The judgment should be affirmed.

### DISSENTING OPINION.

POCHÉ, J. I cannot concur with the opinion and decree of the majority in this case.

It is conceded that Morris Dyer was an absolutely irresponsible person, and that the inscription of his name on the transfer-book of the bank, did not and could not have the legal effect of releasing his immediate transferer, as shown on the registry of the bank.

Hence it is that the receiver of the bank legally exercised his recourse against the plaintiffs, Lesassier & Binder, whose names appeared on the transfer-book of the bank, as the transferrers of the irresponsible or fictitious transferree, Morris Dyer, and that his course in the premises was judicially sanctioned and approved.

For the same reason, and as a corollary of that proposition, flowed the conclusion that the receiver was not allowed to hold the defendant,

35

Kennedy, as a shareholder; the transfer-book did not show that he ha d ever owned the shares of the defunct bank stock, for which the receiver was seeking to levy and enforce contributions from any reputed or apparent holder of the same, other than Morris Dyer, the fictitious transferee, known to him as a negro porter at small wages.

The record shows the following as the real transactions affecting the forty shares of bank stock which have given rise to this litigation.

They were sold by plaintiffs, through the broker, E. C. Feinour, to the defendant, Kennedy, and by him to Thomas A. Adams. Both of the latter are shown to fill all the requirements of responsible shareholders of such stock, under the National Bank Law.

To comply with the true state of things the transfer-book, at the date of the failure of the bank, should have shown the name of Adams as owner of the stock and as the proper party liable for contribution under the National Bank Law, and the book should also have shown the name of Kennedy as the transferee of plaintiffs and as the transferrer of Adams.

Under such a showing no call could have been made on Lesassier & Binder, and to such a showing they were legally entitled.

In default of such a showing they were legally and properly held liable for contributions which they paid under the judgment of a competent court.

The question in the case is, therefore, to ascertain through whose act has the result, visited on the plaintiffs, been operated or brought about.

The record shows that Feinour, the broker, was instructed by his principal, Kennedy, not to enter the latter's name as transferee under the purchase from plaintiffs, for four or five days, and that at the end of that time he was instructed to inscribe his principal's name in pencil in the margin of the transfer-book. And the evidence thus shows that, after his sale of the stock to Adams, in furtherance of the latter's request, Kennedy filled the blank in the transfer signed by plaintiffs on the 24th of February, by inserting, in ink, in his own writing, the name of Dyer.

Through and in consequence of the acts of Kennedy the plaintiffs have suffered a loss which they would not otherwise have incurred.

Hence the conclusion that the party whose acts have caused the damage should be held responsible therefor, is irresistible.

The judgment appealed from should, therefore, have been affirmed.

Rehearing refused.