## OHIO VALLEY NATIONAL BANK v. HULITT.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 108.   Argued November 16, 1906.—Decided January 7, 1907.

While the mere pledgee of national bank stock cannot be held for double liability as a shareholder so long as the shares are not registered in his name, although an irresponsible person may have been selected as the registered shareholder, the real owner of the shares may be held responsible although the shares may not be registered in his name.

Where the pledgee of national bank stock has by consent credited the agreed value of the stock belonging to the pledgor, but registered in the name of a third party who is the agent of the pledgee, on the note, and then proved his claim for the balance against the estate of the pledgor the title to the stock has so vested in the pledgee that, notwithstanding the stock has not been transferred, he is liable to assessment thereon as the owner thereof.

Where the strict compliance with the terms of a note as to sale of the collateral pledged therewith is waived by the maker, the holder who accepts the collateral at an agreed price and credits it on the note is estopped from claiming that he does not become the owner of the collateral because there was no actual sale thereof as required by the note.

These principles applied when the pledgee of national bank stock was a national bank.

137 Fed. Rep. 461, affirmed.

THIS case was begun in the United States Circuit Court by John Hulitt as receiver of the First National Bank of Hillsboro, Ohio, against the Ohio Valley National Bank, to recover the amount of an assessment upon certain shares of the stock of the Hillsboro Bank, which had become insolvent, which assessment was directed by the Comptroller of the Currency in accordance with the provisions of the National Bank Act. The case was tried upon an agreed statement of facts, from which it appears that on March 18, 1893, one Overton S. Price, for a loan of $10,000, gave his promissory note of that date to the Ohio Valley Bank, due ninety days after date, payable to his own order and indorsed by him, and deposited as collateral security for the note, among other securities, fifty shares of stock of the said First National Bank of Hillsboro, Ohio. The note had a power of sale attached to it, signed by Price, and authorizing the holder to sell or collect any portion of the collateral, at public or private sale, on the non-performance of the promise, and at any time thereafter without advertising or otherwise giving Price notice, and providing that in case of public sale the holder might purchase without liability to account for more than the net proceeds of the sale.

On December 25, 1893, Price died, leaving the note due and unpaid, and no payments have been made thereon except as hereinafter stated.

On June 18, 1894, the bank made a transfer of the pledged stock of the First National Bank of Hillsboro, and also of certain other stock in the Dominion National Bank of Bristol, Va., to one Henry Otjen, an employé of the bank, and pe-

cuniarily irresponsible. The shares were transferred on the books of the banks and new certificates issued in the name of Otjen and delivered to him on July 7, 1894. Otjen indorsed the certificates in blank. No money passed in consideration of the transfer, and none was expected, nor was any credit given or indorsed on the note by reason thereof.

The transfer was made upon the understanding and agreement between Otjen and the bank that Otjen should hold the stock as security for the indebtedness of the estate of Price upon the note, he to apply any amounts which he might realize from said stock as credits upon the note. In pursuance of this agreement Otjen subsequently paid the bank sums received from the Dominion National Bank on account of dividends received until the sale of that stock, when the proceeds of sale were likewise applied by him upon the note.

On February 19, 1896, the bank prepared proof of claim against the estate of Price, and at that time believing the stocks transferred to Otjen to afford a reasonable security for the note to the amount of $4,484, indorsed a credit for that sum upon the note, as follows: "Forty-four hundred and eighty-four ($4,484.00) dolls. paid on ac. of within note June 18, '94, being proceeds of sale of 30 shrs. stock Dominion National Bank and 20 shares of stock 1st National Bank of Hillsboro, O." The bank filed its proof of claim for the balance of the indebtedness upon the note; that no consideration was paid for said credit, and the same was not entered on the bank's books; that all dividends arising upon the distribution of the estate of Price were applied upon the note.

The Hillsboro bank continued to do business until July 16, 1896. From the date of transfer at all times the stock appeared on the books of the Hillsboro bank in the name of Otjen, there being nothing on the books to connect the Ohio Valley National Bank with the stock, or to indicate that it had any interest therein; that the defendant bank at no time performed any act of ownership, or exercised or attempted to exercise any of the rights of a stockholder in said bank, or of

the Dominion National Bank, unless the acts stated were in legal intendment of that character.   The Ohio Valley National Bank procured the shares to be transferred to Otjen because it was unwilling to assume the risk of the statutory liability of a stockholder in respect thereto.   The Circuit Court of Appeals held the bank liable as a stockholder, 137 Fed. Rep. 461, and directed judgment accordingly.

*Mr. Robert Ramsey,* with whom *Mr. J. J. Muir* was on the brief, for plaintiff in error:

The transfer to Otjen did not bring defendant into such relation to the shares as to subject it to the statutory liability. *Anderson* v. *Philadelphia Warehouse Co.,* 111 U. S. 479; *Pauly* v. *Trust Co.,* 165 U. S. 606; *Rankin* v. *Fidelity Co.,* 189 U. S. 242.

Defendant's relation to these shares was not in any manner affected by its proof of claim against the debtor's estate.

Where a stockholder seeks by any device to disguise himself for the purpose of escaping this statutory liability, this court has always scrutinized the transaction with a jealous eye; but where a party who has never held that relation, adopts ways and means to protect himself against the danger of apparent ownership, this court has always recognized his right.   Where, as in the case at bar, the party so seeking to protect himself happens to be a national bank, this court declares that there is not merely the right, but the duty of self-protection.   It has gone so far as to say that national banks lack corporate power to incur the risks of a speculative enterprise, or partnership liabilities, by taking or holding corporate or syndicate shares, even though taken in satisfaction of a debt, and that estoppel will not lie to bar the defense. *First National Bank* v. *Converse,* 200 U. S. 425; *Merchants National Bank* v. *Wehrmann,* 202 U. S. 295.

*Mr. Henry M. Huggins,* with whom *Mr. R. T. Hough* was on the brief, for defendant in error.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

Section 5151 of the Revised Statutes provides that the shareholders of every national banking association shall be held individually responsible, equally and ratably, not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. This section undertakes to hold all shareholders responsible, and questions have arisen under varying circumstances as to what constitutes such shareholder.

In *Anderson* v. *Philadelphia Warehouse Company*, 111 U. S. 479, it was held that the mere pledgee who had never acted as a shareholder would not be liable as such, notwithstanding the stock was transferred on the books of the bank and the certificate issued to an irresponsible person, in that instance a porter in the employment of the company, and this although the transfer had been thus made for the purpose of avoiding liability which might be incurred by the shareholders of the bank, in case of insolvency. In the course of the opinion, Mr. Chief Justice Waite, speaking for the court, recognized that the real owner might be held liable as a shareholder, but in that case the facts showed the warehouse company, sought to be held as a shareholder, was never other than a pledgee, and that notwithstanding the transfer to the irresponsible person, the real ownership of the stock remained in the original holder.

In *Pauly* v. *The State Loan & Trust Company*, 165 U. S. 606, the subject was considered at length, and it was held that one who was described in the certificate as a pledgee, and who in good faith held the shares as such, was not a shareholder subject to the personal liability imposed by section 5151. The previous cases in this court were reviewed, and, in summing up the rules relating to the liability of shareholders in

national banks, deducible from previous decisions, among other things it was said: "That the real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of section 5151." And again: "The object of the statute is not to be defeated by the mere forms of transactions between shareholders and their creditors. The courts will look at the relations of parties as they actually are, or, as, by reason of their conduct, they must be assumed to be for the protection of creditors. Congress did not say that those only should be regarded as shareholders, liable for the contracts, debts and engagements of the banking association, whose names appear on the stock list distinctly as shareholders. A mistake or error in keeping the official list of shareholders would not prevent creditors from holding liable all who were, in fact, the real owners of the stock, and as such had invested money in the shares of the association. As already indicated, those may be treated as shareholders, within the meaning of section 5151, who are the real owners of the stock, or who hold themselves out, or allow themselves to be held out, as owners in such way and under such circumstances as, upon principles of fair dealing, will estop them, as against creditors, from claiming that they were not, in fact, owners."

And in *Rankin* v. *Fidelity Trust Company,* 189 U. S. 242, 252, the doctrine was stated that a defendant who was in fact the owner of shares of stock could not avoid liability by listing them in the name of another, notwithstanding it might do so if it were the mere pledgee of the stock; and further, that the case then under consideration turned upon the actual ownership of the shares, which question was properly left to the jury. And to the same effect are well considered cases in other courts, Federal and state. It was held that the real owner might be charged, although his name never appeared upon the books of the bank. *Davis* v. *Stevens,* 17 Blatch. 259, 7 Fed. Cas. 3653, opinion by Mr. Chief Justice Waite; *Houghton* v. *Hubbell,* Circuit Court of Appeals, First Circuit,

91 Fed'. Rep. 453; *Laing* v. *Burley*, 101 Illinois, 591; *Lesassier* v. *Kennedy*, 36 La. Ann. 539.

' Assuming then the established doctrine to be that the mere pledgee of national bank stock cannot be held liable as a shareholder so long as the shares are not registered in his name, although an irresponsible person has been selected as the registered shareholder, we deem it equally settled, both from the terms of the statute attaching the liability and the decisions which have construed the act, that the real owner of the shares may be held responsible, although in fact the shares are not registered in his name. As to such owner the law looks through subterfuges and apparent ownerships and fastens the liability upon the shareholder to whom the shares really belong.

' Applying these principles to the case at bar, we think there can be no doubt of the liability of the Ohio Valley National Bank in this case. Conceding that it was exempt so long as the relation which it held to the stock was that of a pledgee, and that Otjen was the registered stockholder holding for the benefit of the bank as pledgee and not as owner, what was the attitude of the parties after the death of Price and the credit of the supposed value of the stock upon the note and its presentation for allowance and acceptance by the representatives of Price's estate? As the foregoing statement shows, the stock was originally delivered to the bank, with a power of public or private sale for the liquidation of the pledge. After the death of Price the bank caused the stock to be registered in the name of Otjen. After proof of the claim the dividends paid out of the Price estate were credited upon the note. If the bank had followed literally the authority of the power of attorney attached to the note and sold the stock at public or private sale, and itself become the purchaser, we take it there could be no question that it would thus have become the real owner of the stock, and, within the principles of the cases heretofore cited, the shareholder liable under the terms of the statute. We think what was in fact done neces-

sarily had the same effect; the bank applied the value of the stock with the consent of the pledgor, and thus vested the title in the bank. ·

It is urged that although the indorsement upon the note in the form in which it was presented to Price's administrator recited credit as of June 18, 1894, being proceeds of a sale of the stock, there never was a sale in fact, and that the bank is not estopped by anything shown in the case from showing the true situation and the actual transaction between the parties.

Conceding, for this purpose, that Price's representative could have insisted upon a strict performance of the power conferred in the authority given to the bank as to the disposition of the collateral, yet if the representative of Price desired to do so, there was nothing to prevent him from waiving a strict compliance with the terms named and permitting the bank to acquire title to the stock by crediting its value on the note. This is in fact what was done. Instead of selling the stock the bank, in executing the authority conferred, indorsed what it deemed the value of the stock, as of the date of the credit, upon the note, and reduced by the amount of this valuation, presented the note to the administrator of Price, who must have allowed the claim in this form, as it is specifically stated that the subsequent dividends upon the claim were paid to the bank. By this transaction, who became the real owner of the stock? Certainly not Otjen, for it is not contended that he was other than a mere holder of the stock as collateral security to the bank without any beneficial interest. Price had died, and his representative had allowed the claim, showing the application of the value of the stock as a credit upon the note. If Price's representative could have objected to the form in which the bank liquidated the pledge, he did not do so, but accepted the bank's method of divesting him of title by allowing the claim with the credit upon it. The bank thus became the beneficial owner of the stock, and had the Hillsboro National Bank continued solvent it certainly could not

have denied to the Ohio Valley Bank after this transaction the rights and privileges of a stockholder.

As we have seen, this court in construing the banking act has not limited the liability to the registered stockholders. While the registered stockholders may be held liable to creditors regardless of the true ownership of the stock, and the pledgee of the stock not appearing otherwise, is not liable, although the registered stockholder may be an irresponsible person of his choice, yet where the real ownership of the stock is in one his liability may be established, notwithstanding the registered ownership is in the name of a person fictitious or otherwise, who holds for him.

We think the Circuit Court of Appeals did not err in holding the bank, in view of the facts shown in the case, as the true owner and responsible shareholder of the stock in question.

*Judgment affirmed.*