**O'KEEFE v. PEARSON.**

No. 2924.

Circuit Court of Appeals, First Circuit.

Dec. 1, 1934.

Maurice Caro, of Boston, Mass. (John McAuliffe, of Boston, Mass., on the brief), for appellant.

Haven Parker, of Boston, Mass. (Parkman, Robbins, Coughlin & Hannan, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This action was brought by Herbert Pearson, receiver of the Federal National Bank of Boston, to recover a stock assessment against the defendant, James J. O'Keefe, as an alleged owner and holder of $57\frac{16}{20}$ shares of the capital stock of the Federal National Bank of Boston. The case was tried before the court, trial by jury being waived in open court. At the close of the evidence the defendant presented certain requests for rulings which were denied, to the denial of which exceptions were taken. The court found a verdict for the plaintiff in the amount of $1,156, with interest thereon from June 16, 1932, and judgment was entered accordingly. From that judgment this appeal is taken.

The Federal National Bank of Boston was duly incorporated as a national banking association on March 20, 1923, and continued as such until December 15, 1931, when Pearson, the plaintiff-appellee, was appointed receiver by the Comptroller of the Currency. An assessment was duly made by the Comptroller on May 9, 1932, equal to the par value ($20 a share) of the stock, and this action was brought, O'Keefe having refused to pay the amount assessed against and demanded of him.

On August 18, 1922, certain owners of stock in the Federal Trust Company, a banking corporation organized under the laws of Massachusetts, parties of the first part, Daniel C. Mulloney, designated therein as trustee, party of the second part, and the Metropolitan Trust Company, called the depositary, party of the third part, entered into an agreement. By this agreement, which was under seal, these stockholders were to deposit their certificates for shares of stock in the trust company, duly indorsed and stamped for transfer, with the designated depositary, and were to receive therefor trust certificates transferable at the office of the depositary by the registered holders thereof to others, who would receive new trust certificates. The certificates of stock deposited under the agreement were to be surrendered to the Federal Trust Company for cancellation and new stock certificates issued in the name of Mulloney, to be indorsed for transfer by him and retained by the depositary, subject to the agreement.

It was provided in the agreement that: "In the event of any assessment being made or ordered upon the stockholders of the Federal Trust Company each registered holder of a trust certificate hereby agrees for himself, his heirs, executors, administrators and assigns to forthwith pay such assessment as may be made upon or against the stock of the Federal Trust Company held by the Depositary under this agreement and represented by the trust certificate held by him at the time such assessment is made or ordered, and while such assessment is unpaid, no trust certificate shall be transferred or new certificate issued therefor."

Provision was made for the election of a successor to Mulloney as trustee should he die or resign. It was further provided that on the 18th day of August, 1932, or earlier if the trustee or trustees so elected, the Depositary "in exchange for and upon surrender of any trust certificate then outstanding will (in accordance with the terms thereof) * * * deliver at its office in the City of Boston to the registered holder thereof capital stock of the Federal Trust Company to the amount represented to have been deposited with the Depositary, and on account of which said trust certificate was issued," and the trust should terminate.

Any owner of stock of the Federal Trust Company could become a party to the agreement by signing it and delivering his stock certificates to the depositary or, at the discretion of the trustee, might become a party to the agreement without signing it and solely by delivery of his certificates of stock and his acceptance of the trust certificate issued therefor.

The trust certificate provided for by the agreement read in part as follows:

"This certificate certifies that, ———— has deposited with the undersigned Depositary ———— shares of the capital stock of the Federal Trust Company, a banking corporation, organized and existing under the laws of the Commonwealth of Massachusetts, subject to a certain agreement made by and between stockholders of the Federal Trust Company and Daniel C. Mulloney, Trustee, and Metropolitan Trust Company, dated August ——, 1922, an original copy of which is in the hands of said Metropolitan Trust Company and open for a reasonable inspection.

"While said agreement continues in force, the Depositary shall pay to the recorded holder hereof without charge or deduction all cash dividends which may be declared on said shares of stock by said Federal Trust Company and received by it, and during such time the Trustee hereunder * * * shall be entitled to exercise all the rights and power of an absolute owner thereof including the exercise of all right to vote on the stock so deposited at all meetings of the stockholders of the Federal Trust Company, * * * and without intending in any way to restrict or modify the foregoing general power, to vote for any increase or reduction in the capital stock of said Federal Trust Company; it being expressly stipulated that no voting right shall pass by or under this certificate to the holder hereof."

Provision was made for change of depositaries, if desired; and that "the terms 'Federal Trust Company' for the purpose of this agreement and for all rights hereunder shall be taken to mean the above named Federal Trust Company and any corporation or corporations successor to it during the term of this agreement."

The Federal National Bank of Boston in March, 1923, became the successor of the Federal Trust Company, and, at the time the receiver was appointed, December 15, 1931, the Atlantic National Bank of Boston had become the depositary under the agreement. As such depositary it then held under the agreement $60,685\frac{19}{20}$ shares of the capital stock of the Federal National Bank of Boston, and O'Keefe held and owned trust certificates for 56 shares of the stock of the bank and three trust certificate scrip representing fractions of a share of stock ($\frac{19}{20}$,

$1\frac{2}{20}$, and $1\frac{4}{20}$) which could be exchanged for trust certificates by surrendering to the depositary a sufficient number of them to entitle the holder to a trust certificate for one or more full shares.

The records of the Federal National Bank of Boston do not show that the defendant, James J. O'Keefe, ever held any stock in his name in that bank or that he ever signed the agreement of August 18, 1922. The transfer records of the depositary show the defendant as the holder of $57\frac{1}{20}$ shares of trust certificates and trust certificate scrip and one of his trust certificates was for 50 shares. The interest represented by that certificate came out of a trust certificate for 100 shares originally issued to one Fallon, and the remaining trust certificates and all the trust certificate scrip were received by the defendant and represent stock dividends on the shares of bank stock covered by the certificate for 50 shares.

▇ The first question in this case involves the ascertainment of the meaning of the word "shareholders" as used in section 5151 of the Revised Statutes (12 USCA § 63), which provides: "The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. ? * * "

In Pauly v. State Loan & Trust Co., 165 U. S. 606, at page 623, 17 S. Ct. 465, 471, 41 L. Ed. 844, the court, in passing upon this section, said: "Congress did not say that those only should be regarded as shareholders, liable for the contracts, debts, and engagements of the banking association, whose names appear on the stock list distinctly as shareholders. A mistake or error in keeping the official list of shareholders would not prevent creditors from holding liable all who were, in fact, the real owners of the stock, and as such had invested money in the shares of the association. As already indicated, those may be treated as shareholders, within the meaning of section 5151 [12 USCA § 63], who are the real owners of the stock, or who hold themselves out, or allow themselves to be held out, as owners in such way and under such circumstances as, upon principles of fair dealing, will estop them, as against creditors, from claiming that they were not, in fact, owners."

In Rankin v. Fidelity Insurance, Trust & Safe-Deposit Co., 189 U. S. 242, at page 249, 23 S. Ct. 553, 556, 47 L. Ed. 792, it was said: "To charge the defendant with liability as a shareholder it must be made to appear that it had either become the owner of the shares in fact, or had held itself out to be the owner, and thereby estopped itself to deny its liability as such."

And again at page 252 of 189 U. S., 23 S. Ct. 553, 557:

"If defendant were in fact the owner of the shares, it could not avoid liability by listing them in the name of another * * *

"The case then really turned upon the actual ownership of the shares, and this question was properly left to the jury as one of fact."

In Ohio Valley National Bank v. Hulitt, 204 U. S. 162, at page 168, 27 S. Ct. 179, 181, 51 L. Ed. 423, the court said: " * * * We deem it equally settled, both from the terms of the statute attaching the liability and the decisions which have construed the act, that the real owner of the shares may be held responsible, although in fact the shares are not registered in his name. As to such owner the law looks through subterfuges and apparent ownerships and fastens the liability upon the shareholder to whom the shares really belong."

In Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658, the question certified to the Supreme Court for decision was: "Is one, who purchases shares of stock of a national bank, liable for an assessment subsequently imposed by the Comptroller of the Currency upon the stock for the benefit of the creditors of the bank after the insolvency thereof, when it appears that the purchaser bought the stock from the registered holder thereof and received a certificate therefor endorsed in blank by the holder, with intent at the time of such purchase and delivery of giving the stock to his minor child [children], but without knowledge at that time of the failing condition of the bank, or intent to avoid the stockholder's liability, and when, after the acceptance of the endorsed certificate from the seller, and before the insolvency, the purchaser with like knowledge and intent, promptly presents the certificate to the bank, causes the shares to be registered and a new certificate to be issued in the child's [children's] name[s]?"

It was there said at page 499 of 280 U. S., 50 S. Ct. 176: "That the actual owner of the

stock may be held for the assessment although his name does not appear upon the transfer books of the bank, is well settled. Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 167, 168, [27 S. Ct. 179, 51 L. Ed. 423]; Davis v. Stevens, 17 Blatchf. 259, 7 Fed. Cas. 177, 178 [No. 3653]; Case v. Small [C. C.] 10 F. 722, 724; Houghton v. Hubbell, 91 F. 453 ([C. C. A.] 1st Circuit)."

In answering the question whether the intent of Richardson to buy the stock for his minor children and the fact that, by his direction, the transfer was made to them upon the books of the bank and the certificates issued in their names, had the effect of relieving him from liability, the court replied:

"We think not, since the transferees, being minors, were without legal capacity to assume the obligation. Upon coming of age they would have an election either to affirm or avoid the entire transaction. In the meantime, the transfer of the stock having resulted to their disadvantage, the law will avoid it for them, thus leaving the liability of Richardson for assessments unaffected. [Citing cases.] * * *

"Richardson, having bought with his own money, became the owner of the stock. And although the purchase was made with the intent of giving the stock to his children, non constat that he would not change his mind, as he was perfectly free to do."

And Richardson was held liable for the assessment.

■ It follows from what was decided in these cases that, if the defendant was the real owner of the 57¹⁹⁄₂₀ shares of the bank in the hands of the depositary, he was subject to assessment as a shareholder within the meaning of section 5151 of the Revised Statutes (12 USCA § 63).

The verdict or general finding of the District Court in favor of the plaintiff included findings of all facts essential to the verdict, including one to the effect that the defendant was the real owner of the stock, if there was evidence from which such finding could be made. Allen v. Merrimack County Odd Fellows' Mut. Relief Association, 72 N. H. 525, 527, 57 A. 922.

When the defendant received the first trust certificate representing 50 shares of stock in the Federal National Bank, he acknowledged therein that he had deposited that number of shares of the bank's stock with the depositary and the same was subject to the trust agreement of August 18, 1922. The trust certificate also provided that, so long as the trust agreement of August 18, 1922, was in force, the depositary would pay to him as record holder thereof all cash dividends which may be declared on said shares of stock and received by it. These provisions in his trust certificate were undoubtedly evidence in support of the conclusion of the District Court that the defendant was the owner of 50 shares of stock in the Federal National Bank in the hands of the depositary, represented by his original trust certificate, and the same is true as to the later trust certificates issued to him as stock dividends and representing 7¹⁹⁄₂₀ shares of stock of the bank in the hands of the depositary.

The provision of the trust agreement to the effect that on the 18th of August, 1932, or earlier if the trustee or trustees so elected, the depositary would deliver to the registered holder of any trust certificate, upon its surrender, the capital stock of the bank (successor of the Federal Trust Company) "to the amount represented to have been deposited with the Depositary, and on account of which said trust certificate was issued," is likewise evidence of the defendant's ownership of the stock represented by his trust certificates. In fact the trust came to an end on December 15, 1931, when the bank failed and the receiver was appointed, and thereupon the trust certificate holders became entitled to demand and receive the shares of stock of the bank covered by their trust certificates.

Furthermore, under the trust agreement, it was the duty of the depositary to issue trust certificates only for shares of stock of the bank in its hands and deposited under the trust agreement of August 18, 1922, and, in the absence of evidence to the contrary, it is to be presumed that the depositary performed its duty and in issuing trust certificates to the certificate holders did so only when it had in its hands and deposited under the trust agreement shares of bank stock sufficient to answer to the trust certificates it issued. This evidence warranted a finding by the court that no trust certificates were issued by the depositary except for stock in its hands under the deposit agreement, and that the shares of bank stock in its hands, amounting to 60,685¹⁹⁄₂₀ shares, answered the requirements of the trust certificates issued and outstanding.

■ It may be suggested that, inasmuch as no specific shares of stock in the hands of the depositary were set aside to answer to the trust certificates of the defendant, he could not be found to be the owner of any of the bank stock called for by his trust certificates.

But such contention is of no avail, for it appears that all the shares of stock in the hands of the depositary were shares of stock of the Federal National Bank, each share of which was of the face value of $20; and, such being the case, it can make no difference on the question of ownership that no specific shares of bank stock were set apart for the defendant to answer to his trust certificates. Richardson v. Shaw, 209 U. S. 365, at pages 378, 379, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981.

Except to the extent that Mulloney deposited stock of his own with the depositary and received trust certificates, he had no interest in the shares of stock deposited by others to whom trust certificates had been issued. He could not sell, barter, or pledge the stock of others so deposited. All the trust agreement gave him was the right to vote the stock at meetings of the stockholders. He had no interest in the dividends declared by the bank, except to the extent that he held trust certificates for stock he had deposited. On the termination of the trust at the end of the ten-year period or before, if the trustees so elected, or on its termination when the bank failed, he had no right to have any of the stock turned over to him except to the extent that he had deposited it and held trust certificates covering the same.

▮ Neither does the contention of the defendant that the trust agreement was ultra vires, or invalid as against public policy, avail him anything. Had it been declared invalid by a competent court it would have resulted in taking away the voting powers of Mulloney and distributing the stock held by the depositary, not among the original holders who may have sold their rights, but to those who had bought rights therein represented by the trust certificates—assuredly a result which would have placed the defendant in no better position than he is now to contest the question of his liability as a stockholder.

▮ Section 5152 of the Revised Statutes (12 USCA § 66) does not relieve the defendant of his obligation to pay the assessment. That section excuses persons holding stock as executors, administrators, guardians, or trustees from personal liability as a stockholder, but charges the estates and funds in their hands. The defendant was not an executor, administrator, guardian or trustee.

The assessment was made May 9, 1932. Before that date the bank had, on December 15, 1931, failed and ceased to exist. When that occurred the trust came to an end, and the trust certificate holders then, if not before that time, became the absolute owners of the stock of the bank discharged from the trust.

The judgment of the District Court is affirmed, with costs to the appellee.