## STAUDENMAIER v. JOHNSON et al.

District Court, W. D. Wisconsin.
Dec. 8, 1939.

G. Arthur Johnson, of Ashland, Wis., for plaintiff.

Warren B. Foster, of Ashland, Wis., for defendants.

STONE, District Judge.

The defendant, Barney Johnson, was, prior to 1932, engaged in the stock and bond brokerage business at Ashland, Wisconsin, as a sole trader. In 1932, he incorporated the defendant, Barney Johnson & Company, which took over his brokerage business. He owned all of the stock of the corporation, except the qualifying shares, and has, since its incorporation, continued to manage and control its business.

In 1930 the defendant, Robert S. Lord, was employed by Barney Johnson as a stock and bond salesman, and continued in his employ until the date of the incorporation of the defendant, Barney Johnson & Company. He is now, and has been since its incorporation, employed by the company as a salesman.

On March 6, 1930, the defendant, Barney Johnson, purchased stock of the Northern National Bank of Ashland, Wisconsin, the par value of which was $100 per share. On June 22, 1931, he transferred all of the bank stock he then owned, consisting of thirty-one shares, to the defendant Lord for the nominal consideration of $1 per share. The transfer of the stock on the books of the bank was arranged for by Johnson and the stock certificate was returned to him and retained in his possession. Lord assigned as a reason for the alleged purchase of the stock the possibility of acquiring business from the bank through his stock ownership. At the time of the transfer, Lord's account with Johnson was charged with the sum of $31, which he never paid.

On or about October 14, 1932, Barney Johnson and Barney Johnson & Company owed the Ashland National Bank of Ashland, Wisconsin, the sum of $75,000 on a loan which was well secured. On that day one I. I. Aaron of New York City, the owner of fifty shares of stock of the Northern National Bank of Ashland, appeared in Ashland and offered to sell his stock to the officers of the bank at any reasonable price. Failing in this, he offered to purchase the stock owned by the officers for $25 per share. He later offered to sell all his stock for $15 per share and, finding no buyers, he then proposed to offer his stock for sale at public auction on the streets of the city of Ashland at three o'clock in the afternoon of October 14, 1932. Although the defendant, Barney Johnson, was doing no business with the Northern National Bank of Ashland at that time, nevertheless he realized that a circulation of the handbills as threatened by Aaron, advertising his stock for sale at public auction, would immediately cause a run on the Northern National Bank, and, undoubtedly, on the Ashland National Bank which carried his loan. A run on the Ashland National Bank would have been disastrous to the interest of Barney Johnson & Company and of Barney Johnson personally. It would have resulted in the call of his loan and the sale of his pledged securities. The stockholders and directors of the Northern National Bank were in no position financially to purchase the Aaron stock, but all appreciated the effect of the circulation of the handbills advertising the auction of the Aaron stock.

Johnson testified that he discussed with Lord by telephone the situation with reference to the Aaron stock, and that he advised Lord that he would advance the purchase price if Lord would purchase the stock.

The transaction for the transfer of the fifty shares of Aaron stock was completed on October 14, 1932. A broker's memorandum of sale prepared by the defendant company disclosed that Lord purchased the Aaron stock for the nominal price of $1 per share, which was charged to his account with Barney Johnson & Company. The account was further charged with $600 which Lord was to pay Barney Johnson & Company or Barney Johnson if the stock transaction worked out satisfactorily. No part of this account has been paid.

In the Aaron transaction, Barney Johnson & Company paid Aaron $500 in cash and executed and delivered to Aaron a note in the sum of $150 signed by Barney Johnson, payable one year after date, bearing interest at the rate of two per cent. per annum, and transferred the stock to Lord for $1 per share. Although it appears from the records of Barney Johnson & Company that this stock was transferred from Aaron to Lord, nevertheless Barney Johnson and Barney Johnson and Company were the actual purchasers and the real owners of

this stock. The transfer of this stock on the books of the bank on November 21, 1932 was made by Barney Johnson and the defendant corporation. The bank delivered the certificate to them and they have retained possession of it since its delivery. The stock certificate was never in the possession of Lord and he has no knowledge as to where the certificates can be located.

When the transfers of said stock were made to Lord he was, to the knowledge of the defendants, Barney Johnson and Barney Johnson & Company, insolvent, financially irresponsible, and unable to pay any stock assessment.

On January 16, 1933, the Northern National Bank of Ashland was insolvent, and the officers transferred its property to the Comptroller of the Currency of the United States. On January 22, 1934, the Comptroller of the Currency levied an assessment on all the stockholders of the bank pursuant to statute.

At the time the transfers of stock were made to Lord, Barney Johnson knew of the impending insolvency of the Northern National Bank of Ashland. He knew that Lord was insolvent and unable to respond to a stock assessment. Johnson testified that he traded in this bank stock and "* * * that at that particular time all the big estates like the Cochran estate that this stock came from, they were all getting out, all running, so it was just a question of finding someone who had confidence enough to buy it at a discount and take a chance on getting out."

With reference to his attempts to sell the stock, Johnson testified as follows: "Yes, we tried. The market, you see, seemed to dry up automatically. It started with a few bank failures in Eau Claire and around and there was automatically no bid for bank stock. We had been trying—there was a larger block in the beginning, and it finally ended up that we had thirty-one shares left and could not get a bid or sale of any kind. I did not want it and just asked for a bid. At that time no one could talk above a whisper about anything relating to banks, and our entire business revolved around our office in Ashland."

The other bank failures in that locality made it impossible for Johnson to find a market for the stock, and anticipating the possible failure of the bank within a short time, he arranged for a transfer of the stock to a financially irresponsible employee who could not respond to a stock assessment.

Good faith is a requisite in a transfer of bank stock in order to release the transferor from a stockholder's liability. The absence of good faith in this transaction stamps the transfer as being a merely colorable one and insufficient to shift the liability from the transferor to the transferee. Considering the state of mind of the public at the time, and the grave possibility of a run on the bank, which would undoubtedly result in its closing, Johnson made a hurried effort to transfer this stock so as to evade a stockholder's liability in the event of the bank's failure, and Lord served as a convenient transferee. Obviously these transactions were not bona fide. They were sham and colorable, planned and made by the transferors in an attempt to shift their stockholders' liability to Lord, who showed but a passive interest in both transactions. Johnson and Barney Johnson & Company were the actual owners of the stock when the bank failed.

The real owner of stock in a national bank cannot shield himself against liability by putting the title to the stock in the name of some financially irresponsible person. Creditors have the right to call upon actual stockholders for contribution to the statutory assessment and this right cannot be defeated by a colorable transfer of legal title to another who, in fact, holds the same for the benefit of the real owner. A transfer of national bank stock not made in good faith, but for the fraudulent purpose of avoiding the statutory liability of the transferor, is ineffective to accomplish that end where the transferor had notice of the impending insolvency of the bank at the time of the transfer, or the transferee is financially irresponsible.

As to the transaction disclosed by the evidence in this case, the law looks through the subterfuges and apparent ownerships, and fastens liability upon the shareholder to whom the shares really belong. Bank stock may be owned by one person and the certificate registered in the name of another. The actual owners of the capital stock of a national bank, that is, those who have their money invested therein, are shareholders and liable for the assessment made by the Comptroller. Barbour v. Thomas, 6 Cir., 86 F.2d 510; Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Ohio Valley

National Bank v. Hulitt, 204 U.S. 162, 168, 27 S.Ct. 179, 51 L.Ed. 423.

 In a transfer made by a transferor of bank stock in contemplation of liability for a stock assessment, both transferor and transferee may be liable to the assessment. Foster v. Lincoln, C.C., 74 F. 382. However, in this instance, defendant Lord, an employee of the defendants Barney Johnson and Barney Johnson & Company, was undoubtedly dominated by them and obviously misled by his credulity, imposed upon and duped by his employers. The burden of the payment of the assessments referred to in the complaint should rest where it legally and equitably belongs.

It follows that the defendant, Barney Johnson, is liable for the amount due as alleged in the first cause of action, to-wit, the sum of Three Thousand One Hundred Dollars ($3,100), with interest from March 1, 1934, and that the defendants, Barney Johnson and Barney Johnson & Company, are liable for the amount due as alleged in the second cause of action in said complaint, namely, Five Thousand Dollars ($5,000), with interest from March 1, 1934, together with the costs and disbursements of this action; and that the complaint herein shall be dismissed as against the defendant, Robert S. Lord, without costs.

Counsel may submit proposed findings.