WILLIAMS v. VREELAND.

(Circuit Court of Appeals, Third Circuit. August 21, 1917.)

No. 2239.

1. BANKS AND BANKING ⬤⟿248(1)—STOCKHOLDERS—DOUBLE LIABILITY.
    Where a person, with full knowledge of the fact, becomes a record shareholder in a national banking association, the double liability imposed by Rev. St. § 5151, continues until by his act he removes his name from the record, and a transfer of his shares without a change in the corporate records does not free him from liability.

2. BANKS AND BANKING ⬤⟿249(3)—NATIONAL BANK—SHAREHOLDERS—LIABILITY—"RATIFICATION."
    Where a person becomes and for a time continues to be a registered shareholder in a national banking association without knowledge of that fact, he does not incur the double liability imposed by Rev. St. § 5151, unless he approves the transfer by a ratification which implies an intended approval with full knowledge, and until such ostensible shareholder does or assents to some act of the party creating the alleged relation, no estoppel can arise.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ratification.]

3. BANKS AND BANKING ⬤⟿250(5)—SHAREHOLDERS—PRIMA FACIE LIABILITY.
    Proof that defendant was a shareholder of record in a national banking association and that she did nothing to remove her name establishes a prima facie case of the liability to assessment for the double liability imposed by Rev. St. § 5151.

4. BANKS AND BANKING ⬤⟿250(5)—SUIT AGAINST STOCKHOLDER—BURDEN OF PROOF—SHIFTING OF BURDEN.
    Where a bank receiver suing to enforce an assessment against a shareholder makes out a prima facie case, the burden of proving nonliability shifts to the shareholder.

5. BANKS AND BANKING ⬤⟿249(3)—SHAREHOLDERS—LIABILITY—"RATIFICATION."
    Where a husband without her knowledge transferred to his wife on the books of a national banking association stock owned by him, the wife's indorsement of a check payable to the husband and indorsed by him, which was drawn in payment of a dividend declared before the transfer, does not amount to a ratification rendering her liable as a shareholder; the check not indicating that she was the holder of the shares.

6. BANKS AND BANKING ⬤⟿249(3)—STOCKHOLDERS—LIABILITY—EVIDENCE—"RATIFICATION."
    In suit by the receiver of a national bank to enforce an assessment against defendant, who appeared on the books of the association as a shareholder, where defendant denied liability on the ground that the shares had been transferred to her by her husband without her knowledge, and that she had never ratified the transaction, the fact that defendant, at the request of her husband, who, in answer to questions, merely informed her that he had made a mistake, indorsed a power of attorney on the back of the certificates to such stock, did not, where she was not informed that the certificates were in her name, establish a ratification of the transfer, rendering defendant liable as a shareholder, and a contrary finding was warranted.

7. EVIDENCE ⬤⟿66—PRESUMPTIONS.
    Where a wife indorsed certificates of bank stock which had been transferred on the books of the banking association to her by her husband without knowledge, there is a presumption of law that she knew the nature of the transaction.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. EVIDENCE ☞86—PRESUMPTIONS—EFFECT.

A presumption stands in lieu of evidence of the fact, and may support a finding if not rebutted.

9. APPEAL AND ERROR ☞1002—REVIEW—VERDICT.

Where the presumptions and evidence are conflicting, a verdict of the jury thereon is conclusive.

10. TRIAL ☞177—BINDING INSTRUCTION—EFFECT OF REQUEST.

A prayer by each party for binding instructions in his favor is equivalent to a joint request for a finding of fact by the court, and does not amount to a submission without the intervention of a jury within Rev. St. §§ 649, 700 (Comp. St. 1916, §§ 1587, 1668); hence the direction of a verdict by the court is conclusive.

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Action by Christopher L. Williams, as receiver of the First National Bank of Bayonne, against Mary A. Vreeland. There was a judgment for defendant, and plaintiff brings error. Affirmed.

Barber, Watson & Gibboney, of New York City (Stuart G. Gibboney and George M. Burditt, both of New York City, of counsel), for plaintiff in error.

Pierre P. Garvin, of Jersey City, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The single question is, whether the defendant is liable for an assessment, under Section 5151, R. S., on stock standing in her name on the books of an insolvent national bank.

In September, 1913, William H. Vreeland was the record owner of 125 shares of stock of The First National Bank of Bayonne, and Mary A. Vreeland, his wife, was the record owner of 15 shares. After the declaration of a dividend, and before its payment on October 1st following, Vreeland resolved to make a present to his wife of 100 of his shares. He did not, either then or later, disclose or even remotely intimate to her his intention, but proceeded to carry it out by surrendering to the bank certificates in his name for 100 shares, and having issued certificates in her name for a like number, and requesting that a cheque for the declared dividend on these shares be drawn in her favor. It being impracticable to comply with this request, because dividend cheques had already been drawn to shareholders of record upon the closing of the books, he accepted the new certificates in his wife's name and a cheque for dividends thereon in his own name.

Within a day or two Vreeland changed his mind about presenting the shares to his wife, and without mentioning the matter to her, consulted the bank's president as to a method of getting them back in his name, representing that the shares were good collateral and if given to his wife it might be awkward to get them again. The bank official advised him to procure his wife's signature to the customary power of attorney on the back of the certificates, and instructed him how the shares could again be placed in his name by transfer and registration of the wife's certificates (which had not been registered) and registra-

tion of the new certificate to be issued. He thereupon secured his wife's signature, but never surrendered the certificates for transfer or registration. He endorsed the dividend cheque and presented it to his wife, who likewise endorsed it and got the dividend. To that extent he carried out his idea of a gift, without telling his wife the measure of his first intention.

With the certificates of Mary A. Vreeland endorsed and outstanding, the bank failed, and a receiver took over its affairs. The Comptroller of the Currency levied an assessment under Section 5151, R. S., of 100 per cent. against the bank's shareholders. Although 115 shares were then standing in the name of Mary A. Vreeland on the stock ledger and notice of assessment on that number was mailed to her, the receiver treated 100 of these shares as though they belonged to her husband. In enforcing the assessment against both Vreelands (who were without money yet were possessed of property), the receiver took the bond of William H. Vreeland for $25,000, conditioned for the payment of his assessment of $12,500 on 125 shares (25 shares admittedly being his and 100 being the shares represented by his wife's certificates then in his hands). In this bond his wife joined to bar her dower. At the same time Mary A. Vreeland gave a bond for $3,000, conditioned for the payment of her assessment of $1,500 on her 15 shares. In this bond her husband joined. Execution was issued on both, followed by sales resulting in deficiencies. Mary A. Vreeland paid the deficiency on her bond and thus fully met the assessment against her 15 shares. William H. Vreeland had in the meantime gone into bankruptcy, and was unable to meet the deficiency on his bond, amounting to $5,660.80 and interest. Thereupon the receiver shifted his attack and instituted this suit against Mary A. Vreeland on her liability under Section 5151, R. S., upon the 100 shares which stood in her name, seeking to recover the deficiency on her husband's bond, given to meet the assessment enforced against him on the same 100 shares.

The trial court found it unnecessary, as we do, to pass upon questions raised as to the release of the wife's liability because the certificates for the shares had not been registered and because demand for the amount of the assessment had been made upon and settlement accepted from her husband. The determining question was and is, What was the liability of the wife on the record entry of her stock holding at the time of the assessment?

At the trial, the receiver proved that the defendant was a record shareholder. This the defendant admitted but pleaded her ignorance of it, showing by the testimony of others the circumstances how she became such and by her own testimony how she in ignorance continued such. The receiver also proved that she had done nothing to cause her name to be removed from the record. This also she admitted.

As there was no dispute in the testimony, counsel agreed that there was no question for the jury, and on motions for binding instructions for both the plaintiff and defendant, submitted the question to the court.

The question submitted, as we understand it, was not a question of what is the legal liability of a record shareholder of a national bank

to assessment under Section 5151, R. S. That liability, under varying circumstances, has been defined by the statute and settled by the courts. The question, as we view it, was one of evidence, or rather, of the sufficiency of evidence to bring the defendant as a shareholder within or to excuse her from the liability imposed by law.

[1] Section 5151, U. S. R. S., provides, that shareholders of a national bank shall be individually and ratably responsible for all debts and engagements of the bank to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares. This is generally known as the "double liability" act. As to its effect upon a record holder of stock, the Supreme Court has said (Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571):

"But the settled doctrine is that, as a general rule, the legal owner of stock of a national bank association—that is, the one in whose name stock stands on the books of the association—remains liable" to the association "so long as the stock is allowed to stand in his name on the books, and consequently, that although the registered owner may have made a transfer to another person, unless it has been accompanied by a transfer on the books of registry of the association, such registered owner remains liable."

[2] When, therefore, a person becomes a record shareholder with full knowledge of the fact, he continues such (notwithstanding he may have disposed of his shares) until by his act he removes his name from the record. But it has developed in the cases that persons have become and have for a time continued record shareholders without knowledge of that fact. With respect to the liability of such the Supreme Court has expressed itself. In Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531, the court, speaking with reference to the facts of that case, said:

"It is true, as already suggested, there was evidence tending to show that the transfers of stock were made originally without defendant's knowledge, and the jury might reasonably have concluded, under all the evidence, that the transfers were made, and caused to be made, by her husband. * * * The vital question remained whether the defendant became the owner of the stock within the meaning of the statute regulating the individual liability of the shareholders of national banking associations. * * *

"If she became *aware* of the transfers, after they were made, and thereafter received the dividends, she became a shareholder for all purposes of individual liability in respect to the contracts, debts and engagements of the bank, as fully as if the transfers had been made originally with her knowledge and consent. * * *

"We must not be understood as saying that the mere transfer of the stocks n the books of the bank to the name of the defendant imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. *If the transfers were, in fact, without her knowledge or consent, and she was not informed of what was so done—nothing more appearing, she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the bank.* But if, after the transfers she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks."

The test of liability therefore seems to be the fact of being a record shareholder, knowledge of that fact, and some act in approval or ratification of it. Along this line the cases have been tried.

In Kenyon v. Fowler, 155 Fed. 107, 83 C. C. A. 567, affirmed 215 U. S. 593, 30 Sup. Ct. 409, 54 L. Ed. 341, the case turned on the defendant's admitted knowledge, that by an unauthorized act stock had been placed in his name for the ostensible purpose of holding him out as a stockholder, and on the inference of his acquiescence therein because of his failure to disapprove or repudiate the act.

In Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531, stock had been placed in the name of the defendant without her knowledge, but knowledge thereafter was imputed to her by her acts in joining in an application to convert the savings bank into a national bank, and by accepting cheques for dividends on the stock drawn to her order and by her endorsed. Having accepted benefits arising from her stock ownership she was estopped to deny her liability. National Bank v. Case, 99 U. S. 628, 632, 25 L. Ed. 448; Pauly v. State Loan & Trust Co., 165 U. S. 606, 612, 17 Sup. Ct. 465, 41 L. Ed. 844.

In Finn v. Brown, 142 U. S. 56, 57, 12 Sup. Ct. 136, 35 L. Ed. 936, the person in whose name stock was entered on the books, was a director of the bank and acting cashier. To become the former he had to be a stockholder, and had to make an affidavit that he was a stockholder; while as a part of his duties in the latter position, he kept the stock ledger. He was therefore conclusively presumed to have known that he was a stockholder.

The law of ratification which we think applies to the case in hand, is that stated by the Court of Appeals of New York in Glenn v. Grath, 133 N. Y. 38, 31 N. E. 344, as follows:

"It (a ratification) implies a *conscious and intended approval of the act done.* It rests upon the actual and existing purpose to make such approval. Hence, the courts say, that *it must occur with full knowledge of all the facts.*"

Referring to the principle of estoppel, the court said:

"That question is not reached, because before it can be reached there must be shown to exist some act of the party, done by him or with his assent, creating the alleged apparent relation. That fact must be established before any question of estoppel can arise. If the act done, the false appearance created, is the act, not of the party, but of some third person, such party is in no manner bound or affected by it unless he either originally authorized it or subsequently ratified it."

And again the court said:

"Where the shareholder consciously accepts that relation, he ought to bear its burdens as well as enjoy its benefits; and it is easy to imply a promise to perform that duty. But where he does not accept the relation, where it was put upon him by another without authority and against his will, where, instead of accepting its benefits, he repudiates them at serious loss, where his mind and that of the company never met in any contractual relation, where it was not his duty to pay, and he explicitly refused to take what was offered, all foundation for an implied promise is gone. The facts do not admit of it, for *the law does not raise a fiction to accomplish a wrong.* And thus again we come to the proposition that the real truth must be ascertained, and when ascertained must control. And that real truth is that the defendants repudiated and did not ratify the unauthorized act of McKim. *The whole force of a*

*ratification lies in conscious and intended assent with full knowledge of the facts. If there is no such intent and no such volition, but a contrary intent and an opposite purpose, there is no ratification.* The absence of any such intent and the presence of a different one is clearly disclosed by the facts."

This being the law, the question in this case, as we have said, becomes one of evidence: Has the plaintiff established the defendant's liability by sufficient testimony? Or has the defendant overcome the plaintiff's case by evidence sufficient to establish her non-liability?

[3, 4] The plaintiff proved that the defendant was a shareholder of record and that she did nothing to remove her name as such. This was sufficient to establish prima facie the defendant's liability. Finn v. Brown, 142 U. S. 56, 57, 12 Sup. Ct. 136, 35 L. Ed. 936; Matteson v. Dent, 176 U. S. 521, 530, 20 Sup. Ct. 419, 44 L. Ed. 571. The burden then shifted to her (Finn v. Brown, supra) to show that the act of making her a shareholder was in the first instance unauthorized; that it was without her knowledge or consent; and that she has not since acquiesced in or ratified it. That she has sustained the burden upon the first two points is not disputed; therefore the remaining question is as to evidence of her ratification.

[5] Evidence of the defendant's ratification is restricted to her two acts, first, of endorsing a dividend cheque and receiving the dividend; and, second, of endorsing the certificates of stock, that is, of signing the power of attorney on the back of each. The first may readily be disposed of.

It is urged that in signing the dividend cheque the defendant came within the case of Keyser v. Hitz, supra. In that case the wife received three cheques made to her order. The cheques showed by appropriate printing that they were dividend cheques on stock of a named national bank. By endorsing them the court charged her with knowledge of what they inevitably told her. But here the cheque endorsed by the wife, though a dividend cheque, was made to the order of the husband, who first endorsed it. Her endorsement of a cheque made payable to the order of her husband, in carrying out what indubitably was a present to her, did not charge her with notice that the stock upon which the dividend was declared stood in her name. Following the reasoning in Keyser v. Hitz, the legal inference and imputation are just the contrary. By accepting from her husband a dividend cheque made payable to *his* order, she was justified in thinking that the stock upon which it was issued stood in *his* name. This thought, doubtless, had a bearing upon her next act.

[6] The defendant's next and last act in relation to the bank stock which had been placed in her name without her knowledge or consent, was in affixing her signature to the power of attorney upon the back of each certificate. This she did without looking at their face, or learning what they were. Her husband placed the certificates before her face down, and said, "Mary, will you sign these papers for me?" She said, "What are they?" He replied, "They are some bank stock; I have made a mistake." Continuing, she testified:

"I didn't know that the certificates were in my name; I didn't know anything about them; I knew that Mr. Vreeland would not ask me to do any-

thing I should not do; he never has.  *  *  *  He didn't tell me it was in my name.  *  *  *  He didn't tell me in what respect he had made a mistake. I didn't feel that he should explain it. He just said he had made a mistake and asked me to sign it. That was all."

Considering this testimony in connection with corroborating testimony, it appears to us, that what Mary A. Vreeland did, in legal effect, was to make a valid execution of a power of attorney for the transfer of stock. That act, in so far as it authorized a transfer of stock, she cannot avoid by pleading ignorance. As the question here does not involve the validity of the act to effect a transfer, but concerns its evidential imputation of the knowledge with which it was done, we are of opinion that the circumstances which attended the act were a part of it, and affected the evidential inferences to be drawn from it. These circumstances show, that before acting, the defendant requested to be informed as to what she was asked to do; this information was denied her. It was denied her under representations and influences, which, when she acted, led her to believe she was doing something entirely different from that which she was actually doing; that is, she was made to believe she was correcting a mistake of her husband, a mistake affecting his affairs, not that she was dealing with or assigning away her own property. Therefore, we think the circumstances were such as to negative the knowledge, which otherwise it is presumed her act would have imparted. They contradicted the normal imputations of her act, and left her without that knowledge which was a prerequisite to a valid ratification of her husband's unauthorized act.

Upon this line of reasoning we think the court's finding for the defendant upon the evidence can be sustained. But aside from the interpretation favorable to the defendant, of which we think the evidence is susceptible, we are of opinion the judgment must be sustained upon an altogether different ground.

[7-10] There is an undoubted presumption of law, that Mary A. Vreeland knew what she was doing when she endorsed the certificates of stock and that she knew their contents, and thus she ratified the act of her husband. Being a presumption it stands in lieu of evidence of the fact, and had it not been rebutted, it would have been sufficient to fasten liability upon her. Being only a presumption, she endeavored to rebut it by evidence. While neither the evidentiary presumption nor the rebuttal evidence was disputed, the two were in conflict. If the case had gone to the jury with the evidence in this state, the judge doubtless would have submitted the question of her knowledge, and the jury's finding upon the fact of her knowledge would have concluded both parties. Instead of submitting the case to the jury, however, each party asked the court for binding instructions in his favor, which, under Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654, is not a submission to the court without the intervention of a jury, within the intent of Rev. Stat. §§ 649, 700 (Comp. St. 1916, §§ 1587, 1668), but is equivalent to a joint request for a finding of fact by the court, and when the court, acting upon such request, di-

rects the jury to find for one of the parties, both are concluded on its finding.

In this case the parties submitted to the court the question of the wife's ratification of her husband's unauthorized act; that question was one of fact; upon it depended her liability. The court's decision, as evidenced by its instruction to the jury that they render a verdict for the defendant, was a finding of fact, which concluded both parties as effectually as if the same fact had been found by the jury.

The judgment below is affirmed.