[S. F. No. 7688. In Bank.—February 28, 1919.]

## FRANK SHEAN, Appellant, v. VIOLET M. COOK, as Administratrix, etc., Respondent.

[1] CORPORATIONS—STOCKHOLDER'S LIABILITY—CONSTRUCTION OF TERM "STOCKHOLDER"—CONSTITUTIONAL LAW.—A stockholder of a corporation, within the meaning of article XII, section 3, of the constitution, declaring stockholder's liability, is one who owns shares in a corporation which has a capital stock, being so defined in section 298 of the Civil Code, which was in effect at the time of the adoption of the constitutional provision, and the legislature in providing in section 322 of the Civil Code that the term "stockholder" applies not only to such person as appears upon the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another, had in mind the provisions of section 324 of said code, providing that title to the stock may be transferred by indorsement and delivery of the certificate, but such transfer is not valid except as to the parties thereto until the same is so entered upon the books of the corporation.

[2] ID.—TRANSFER OF STOCK TO WIFE—REFUSAL TO ACCEPT—INDORSEMENT FOR PURPOSE OF TRANSFER — NONLIABILITY TO CREDITORS.— Where the president of a corporation caused a new certificate for shares of stock of which he was the owner to be issued to his wife, and she, upon being tendered the certificate, immediately repudiated the transaction and refused to accept the stock, but for the purpose of perfecting her repudiation and permitting the ownership of the stock to appear upon the books of the corporation in accordance with the real fact indorsed the certificate so that such stock might

be transferred on the books in the usual manner, she did not thereby recognize ownership so as to make her liable to creditors of the corporation under article XII, section 3, of the constitution, upon her husband's failure to transfer the stock from her name; her indorsement being more in the nature of a quitclaim than the usual power of attorney consistent with an assumption of ownership.

[3] ID.—ACTION UPON STOCKHOLDER'S LIABILITY — DENIAL OF OWNERSHIP—ABSENCE OF ESTOPPEL.—In an action to recover from the wife upon her alleged stockholder's liability, the doctrine of estoppel to deny ownership cannot be invoked where the creditors did not know at the time the credit was extended that she was shown by the books of the corporation to be a stockholder.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro and A. E. Roth for Appellant.

Bert Schlesinger for Respondent.

Heller, Powers & Ehrman, *Amicus Curiae.*

WILBUR, J.—This action was brought by plaintiff to recover from Carrie M. Cook upon her stockholder's liability for indebtedness incurred by the Morton L. Cook Company, a corporation, in which it was alleged she owned 49,095 shares of the total capital stock of fifty thousand shares. Morton L. Cook, her husband and guardian, was joined as defendant. The court found that Carrie M. Cook was not a stockholder in the corporation and rendered judgment in favor of defendants. Plaintiff appeals. Mrs. Cook has since died and the administratrix of her estate with the will annexed has been substituted. The main question presented by the appeal is as to the sufficiency of the evidence to support the finding of the court that Mrs. Cook was not a stockholder in the corporation. In determining that question we must consider the evidence from the view most favorable to the conclusion of the court. The corporation was organized March 6, 1903. Morton L. Cook was the owner of 49,095 shares. On the 28th of October, 1908, he caused a new certificate for these shares to be issued to Carrie M. Cook. Mr. Cook took this certifi-

cate to his wife, telling her that they had decided to make her the principal stockholder of the Morton L. Cook Company. She immediately repudiated the transaction and refused to accept the stock or to have anything to do with the matter. Two or three days later her husband told her that if she was not going to have anything to do with the corporation she should sign an indorsement that he had written upon the back of the stock as follows: "October 28, 1908. I hereby assign any and all int. I may have to this stock to Morton L. Cook." She thereupon signed said indorsement. Mr. Cook, who was during this whole period president of the corporation, took the stock to Mr. Alderson, who was the secretary, and said, "Mr. Alderson, that is all off; just let that matter remain in abeyance, I will take it up again at a later date." The stock certificate ever since October, 1908, has remained in the custody of Morton L. Cook in his safe deposit box in San Francisco. Mrs. Cook never had anything to do with the corporation or with said stock other than as stated. The corporation was actively engaged in business and the indebtedness upon which plaintiff sued was incurred by the corporation between the first day of January, 1912, and the first day of February, 1914. Before that time Mrs. Cook, on December 10, 1910, had been declared an incompetent and her husband had been appointed her guardian. She was under this guardianship up to the time of her death. It is obvious that there never was any contract or agreement between Mrs. Cook and the corporation that she should become a stockholder. Upon being tendered the stock she refused the same and returned it to the president of the corporation, who had presented it to her, and for the purpose of perfecting her repudiation and permitting the ownership of the stock to appear upon the books in conformity with the real fact she indorsed the same, so that such stock might be transferred on the books of the corporation in the usual and proper manner. Morton L. Cook was at all times the owner of the stock. Appellant's contention is that as Mrs. Cook was shown by the books of the corporation to be a stockholder and by reason of the presentation to her of the stock certificate and her indorsement thereof must have known that fact, she was liable for her proportionate share of the indebtedness of the corporation during such period as the stock continued to appear upon the books of the corporation in her name. This contention is based upon the

following provision contained in section 322 of the Civil Code relating to stockholders' liability: "The term stockholder, as used in this section, applies not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another; . . . " The statutory liability of stockholders is declared by our constitution (article XII, section 3): "Each stockholder of a corporation, or joint stock association, shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock, or shares of the corporation or association." At the time this constitutional amendment was adopted, the Civil Code, in accordance with the general law concerning the subject, declared: "The owners of shares in a corporation which has a capital stock are called stockholders." (Civ. Code, sec. 298, enacted 1871.) [1] The term "stockholder," therefore, as used in the constitution, must be construed in the light of this definition, and the liability, therefore, attaches to the owner of the stock. Section 322 of the Civil Code uses the exact language with reference to stockholders' liability as that contained in the constitution, excepting that the words "of joint stock association" and the words "or association" are omitted in the statutory declaration of liability. The remaining provisions of section 322 are obviously and necessarily for the purpose of carrying out the constitutional and statutory liability thus declared. Under the constitutional declaration of liability, carried into section 322, that liability is predicated upon ownership of the stock. (*Western Pacific Ry. Co.* v. *Godfrey,* 166 Cal. 346, [Ann. Cas. 1915B, 825, 136 Pac. 284].) It is evident that the legislature in its declaration that "the term stockholder . . . applies not only to such persons as appear by the books of the corporation to be such," etc., had in mind the provisions of section 324 of the Civil Code, relating to transfers of stock upon the books of the corporation, and the effect of such books as evidence of ownership. The term "stockholder" had already been defined (Civ. Code, sec. 298), and it was neither necessary nor desirable to again define the term. By the terms of section 324 of the Civil Code, it is provided that title to the stock may be transferred "by indorsement . . . and the delivery of the certificate; but

such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books of the corporation." In considering whether the fact that the name of Mrs. Cook appeared upon the books of the corporation as a stockholder made her liable under the statute to plaintiff, it will be necessary to consider some of the previous decisions of this court upon the subject. In *Welch* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248], and *Shattuck & Desmond etc. Co.* v. *Gillelen,* 154 Cal. 778, [99 Pac. 348], the court had under consideration the statutory liability of a stockholder in a nonbanking corporation, where the books of the corporation showed the defendant to be a stockholder at the time the indebtedness sued upon was incurred. Gillelen was a pledgee of the stock, but by mistake, which he endeavored to correct, the stock was issued to him personally, and he was shown by the books of the corporation to be a stockholder. In the latter case it was said, with reference to section 322 of the Civil Code: " . . . the only rational construction of the section, that the language 'such persons as appear by the books,' etc., must be limited to persons who knowingly or voluntarily permit their names to appear as stockholders." In both cases it was held that a construction of the section which would lead to the result that "would necessarily preclude one from showing that while upon the face of the corporate books he appeared to be a stockholder, yet in fact he was not; that he had never owned or subscribed for any stock or authorized the issuance of any to him by the corporation, . . . cannot seriously be considered." In *Welch* v. *Gillelen, supra,* it was held that the relation of the stockholder to the corporation was one of contract; that one could not become a stockholder, and liable to the creditors of the corporation, because of entries in the stock book of the corporation made without his consent. (See, also, *People's Home Sav. Bank* v. *Stadtmuller,* 150 Cal. 108, [88 Pac. 280]; *Geary St. etc. R. R. Co.* v. *Bradbury Estate Co.,* 179 Cal. 46, [175 Pac. 457].) In *Shattuck & Desmond etc. Co.* v. *Gillelen, supra,* concerning appellant's contention that the stockholders were liable, it was said: "The decisions relied upon by the appellant in that case (*Welch* v. *Gillelen, supra*) were shown to be cases where the party asserting that he was not a stockholder had either knowingly and voluntarily assumed that position upon the books of the corporation, or, if he had

not originally done so, had by his subsequent conduct estopped himself from denying the relationship.'' The case of *Hurlburt* v. *Arthur,* 140 Cal. 106, [98 Am. St. Rep. 17, 73 Pac. 734], involved the statutory liability of stockholders in a banking corporation under sections 321 and 322 of the Civil Code. The question of an unauthorized issuance or transfer of stock was not involved or considered. While the construction of sections 321 and 322 of the Civil Code are there considered, the effect of the opinion must be determined in the light of the point under discussion, namely, the liability of stockholders in a banking corporation. In such case the stock books and public notice of transfers are by statute declared to be conclusive evidence of the ownership of stock (Civ. Code, sec. 321). It was, therefore, held that where the holder of stock as pledgee had the stock transferred to him in his own name and was shown on the books as owner thereof and not as a pledgee, he was liable as a stockholder to creditors. The same rule also holds good in other corporations. (*Welch* v. *Gillelen, supra; Shattuck & Desmond etc. Co.* v. *Gillelen, supra; Baines* v. *Babcock,* 95 Cal. 581, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776].) In *Baines* v. *Babcock, supra,* the defendant, who was shown by the books of the corporation to be the owner of stock, offered to prove that he was the real owner of only 425 shares issued to him by the corporation, and that the others standing in his name on its books were owned by other parties, and that they were issued to him as matter of convenience to enable him to negotiate a loan for such owners. The evidence was excluded because of the rule which was there stated to be well settled, ''that one to whom stock is issued by the corporation, and who has the same placed in his name on the corporation books as the owner, is liable to the creditors of the corporation as though he were the absolute owner; and this whether he was in fact a pledgee, agent, or trustee for the real owner.'' As was suggested in *Hurlburt* v. *Arthur, supra,* the construction placed upon the sections of the National Banking Act by the federal courts is of assistance in construing sections 321 and 322 of the Civil Code. Section 5151 of the United States Revised Statutes provides: ''Shareholders of every national banking association shall be individually responsible,'' etc. Section 5210 of the United States Revised Statutes, [6 Fed. Stats. Ann. (2d ed.), p. 789; Comp. Stats. (1916 ed.), sec. 9773], like section

321 of our Civil Code, requires the keeping of a list of stockholders for the inspection of shareholders and creditors, but it does not provide that such list shall be "conclusive evidence as to who are stockholders," as does section 321 of the Civil Code.    The general tenor of the decisions of the federal courts is very well set forth in *Williams* v. *Vreeland,* 244 Fed. 346, [156 C. C. A. 632], circuit court of appeals, third district. In that case the facts were very similar to the instant case. There the wife indorsed a dividend check which, however, was issued in her husband's name, and also signed a power of attorney upon the back of the stock authorizing its transfer. She did not know that the stock had been issued in her name, and her signature to the power of attorney for the transfer of the stock was procured without her seeing the face of the certificates or knowing what they were.    Her husband placed the certificates before her, face down, and said, "Mary, will you sign these papers for me?"    She said, "What are they?" He replied, "They are some bank stock; I have made a mistake."    The court states the rule to be applied in testing the question of liability, to the creditors of the corporation, of the wife under the circumstances as follows: "The test of liability, therefore, seems to be the fact of being a record shareholder, knowledge of that fact, and some act in approval or ratification of it.    Along this line the cases have been tried." The court cited with approval the decision of the court of appeals of New York in *Glenn* v. *Garth,* 133 N. Y. 35, 43, [30 N. E. 651, 31 N. E. 346], and quoted therefrom a part of the opinion pertinent here, as follows: "It [a ratification] implies a conscious and intended approval of the act done.    It rests upon the actual and existing purpose to make such approval. Hence, the courts say that it must occur with full knowledge of all the facts. . . . Where the shareholder consciously accepts that relation, he ought to bear its burdens as well as enjoy its benefits, and it is easy to imply a promise to perform that duty.    But where he does not accept the relation, where it was put upon him by another without authority and against his will, where, instead of accepting its benefits, he repudiates them at serious loss, where his mind and that of the company never met in any contractual relation, where it was not his duty to pay, and he explicitly refused to take what was offered, all foundation for an implied promise is gone.    The facts do not admit of it, for the law does not raise a fiction to accom-

plish a wrong. And thus again we come to the proposition that the real truth must be ascertained, and when ascertained must control. And that real truth is that the defendants repudiated and did not ratify the unauthorized act of McKim. The whole force of a ratification lies in conscious and intended assent with full knowledge of the facts. If there is no such intent and no such volition, but a contrary intent and an opposite purpose, there is no ratification. The absence of any such intent and the presence of a different one is clearly disclosed by the facts." The United States circuit court of appeal sustained the finding of the trial court that Mrs. Vreeland was not liable as a stockholder of the bank to the creditors of the corporation. **[2]** In the instant case Mrs. Cook refused to accept the stock offered her, and her indorsement is not the usual power of attorney consistent with an assumption of ownership of the stock, but is more in the nature of a quitclaim. **[3]** There is no element of estoppel in the case. The creditors did not know at the time credit was extended that Mrs. Cook was shown by the books of the corporation to be a stockholder.

Appellant relies upon the case of *Abbott* v. *Jack,* 136 Cal. 510, [69 Pac. 257]. In that case, at the request of the husband, a certificate for 330 shares of stock had been issued to Mrs. Jack as owner, March 14, 1896, and the same stood in her name on the books of the corporation until July 17, 1899, when it was surrendered and canceled, "and her acceptance of the stock is shown by her written assignment of it to R. E. Jack, her husband, of date March 16, 1896." It was there held: "From this it appears that she became a stockholder of the corporation on or before March 16, 1896, and that she continued to appear as such on the books of the company until the cancellation of the certificate, July 17, 1899. She therefore continued to be a stockholder as the term is defined in section 322 of the Civil Code, and under the provisions of that section (no facts being found to exonerate her) she continued to be liable, along with her husband. (Civ. Code, secs. 322, 324; *Duke* v. *Huntington,* 130 Cal. 274, [62 Pac. 510]; *Baines* v. *Babcock,* 95 Cal. 593, [29 Am. St. Rep. 158, 27 Pac. 674, 30 Pac. 776]; *Moore* v. *Boyd,* 74 Cal. 174, [15 Pac. 670]; *O'Connor* v. *Witherby,* 111 Cal. 528, [44 Pac. 227].)" The holding of the court would thus seem to be that the issuance of the certificate, coupled with the indorsement and the fact

that her name appeared upon the books of the corporation, *ipso facto* created Mrs. Jack a stockholder, and the finding of the court to the contrary was erroneous. The court added: "R. E. Jack indeed testified that on notifying her of the issue of the stock she refused to receive it; and he further testified that he told her, if she would not receive it, she must assign to him. . . . On a new trial, the question of her liability as affected by the facts testified to by R. E. Jack, or otherwise appearing, can be considered; and as it is clear that there is a liability on her or her husband, or on both, the plaintiff, if he be so advised, should be permitted to amend his complaint by charging the latter with such liability." The reversal of the trial court in that case seems to be based rather upon the condition of the record than upon the substantive rights of the parties. It is said: "But there is no finding as to these or other facts tending to exonerate her, and their effect cannot, on the record as presented, be considered." The necessary implication from the decision is that if the court had found the fact to be that the wife had refused to receive the stock and had assigned it to her husband for the purpose of making effective her repudiation, she should not be held as a stockholder. In view of the construction placed upon the record in that case, the decision cannot be said to be an authority for the plaintiff in this case, but rather, on the whole, either leaves open the question as to the effect of the repudiation by the wife of the transaction, or decides that question in favor of the nonliability of the wife. In the case of *Abbott* v. *Jack, supra,* the fact that section 321 of the Civil Code makes the books conclusive evidence of the liability of the stockholder is apparently not relied upon by the court. In so far, however, as this case can be considered an authority for the proposition that the stock books of the corporation are conclusive as to the liability of stockholders in a nonbanking corporation, the case has been overruled by the subsequent cases of *Welch.* v. *Gillelen,* 147 Cal. 571, [82 Pac. 248], and *Shattuck & Desmond etc. Co.* v. *Gillelen,* 154 Cal. 778, [99 Pac. 348]. (See, also, *Western Pac. Ry. Co.* v. *Godfrey,* 166 Cal. 346, [Ann. Cas. 1915B, 825, 136 Pac. 284].)

In addition to the facts heretofore stated it may be said that M. L. Cook, the husband, while acting as guardian, reported to the court sitting in probate, on several occasions, that the stock in question belonged to his wife and was a part

of her estate.   These declarations, however, merely went to
the question of his credibility, and the court having based its
decision upon the truth of his statement concerning the origi-
nal transaction, if we hold his statement sufficient to support
the finding that she was not a stockholder, as we must do upon
the authorities above quoted, the judgment must be affirmed.

The judgment is affirmed.

Shaw, J., Sloss, J., Melvin, J., Lawlor, J., and Angellotti,
C. J., concurred.