PEPPERS *v.* PENNSYLVANIA DOOR & SASH COMPANY.

Opinion delivered June 21, 1926.

1. CONTINUANCE—ABSENCE OF PARTY.—A continuance was properly denied upon a showing that defendant was an important witness, and was absent attending to important business of an undisclosed character.

2. CONTINUANCE—FAILURE TO PRODUCE DOCUMENT.—Failure of plaintiff to produce an original document pursuant to notice *held* not a sufficient reason for postponing the trial when defendant's counsel knew that such document had not been produced, and a copy was available.

3. CONTRACTS—WHAT LAW GOVERNS.—The law of the State in which a contract is to be performed governs in its construction and in the determination of the rights and liabilities of the parties.

4. CORPORATIONS—LIABILITY OF STOCKHOLDERS.—Under Const. Cal. art. 12, § 3, as construed by the Supreme Court of that State, a stockholder is primarily liable for proportionate share of corporate liabilities, and a creditor need not pursue the corporation before suing a stockholder, notwithstanding the demand is for unliquidated damages for breach of a contract.

5. PLEADING—ADMISSION BY FAILURE TO DENY.—Failure to deny allegations of the complaint is an admission of their truth.

6. EVIDENCE—CONTENTS OF STOCK BOOK.—Testimony of the vice president and active manager of a corporation as to the number of shares therein owned by the president is competent as against contention that such fact is to be shown only by the stock book.

7. SALES—DAMAGES FOR BREACH.—In an action by a buyer for breach of a contract for the sale of lumber f. o. b. cars, the loading charges are proper element of damages.

8. SALES—DAMAGES FOR BREACH.—The cost of surfacing lumber in excess of the contract price is a proper element of damage for

breach of a sale contract, requiring the seller to surface lumber as directed.

Appeal from Howard Circuit Court; *B. E. Isbell,* Judge; affirmed.

*J. G. Sain,* for appellant.

*R. B. Ivory* and *W. P. Feazel,* for appellee.

SMITH, J.   Appellee brought this suit in the Howard Circuit Court against appellant, and for its cause of action alleged that, on the 16th day of April, 1921, the Pennsylvania Door & Sash Company, a Pennsylvania corporation, entered into a contract with the Peppers-Cotton Lumber Company, a California corporation engaged in the sawmill business, for the entire cut of lumber No. 2 shop and better, white and sugar pine, for the season of 1921, estimated at 6,000,000 feet, and that the California corporation, hereinafter referred to as the lumber company, breached this contract by failing to deliver the lumber contracted to be delivered. That T. H. Peppers was the president and principal stockholder of the lumber company, and there was a prayer for damages against Peppers as a stockholder in the lumber company. There was a verdict and judgment for the plaintiff, and Peppers has appealed.

Although a citizen of California, Peppers was served with the summons while sojourning in this State, and he filed an answer denying the material allegations of the complaint.

When the cause came on for trial a motion for continuance was filed, and an exception was saved to the action of the court in overruling this motion. The ground of the motion was that Peppers had left his home in California on February 18, 1925, for the purpose of going to Chicago and New York and of returning to Nashville, where the case was pending, to be present at the trial, but that it was impossible for him to be present, and that his presence was highly important to a proper presentation of his defense to the cause of action sued on. It was not shown, however, wherein it was impossible for Peppers to be present at the trial. There was no ele-

ment of surprise in the case, and no unavoidable casualty of any kind was shown. So far as any showing was made, nothing appears except that Peppers had important business, of an undisclosed character, to which he preferred to attend rather than the trial, and there was therefore no error in overruling the motion for continuance. *Trumbull* v. *Harris*, 114 Ark. 493.

The contract which it is alleged the lumber company breached was in writing, and contained specifications as to kind of lumber, dimensions, and prices, the prices being f. o. b. Macdoel, California, the place where the mill was located. The lumber company entered upon the performance of the contract, and made a partial delivery of the lumber contracted for, when it ceased to make deliveries under the contract, and later a receiver was appointed by the court in California, who took over the assets and affairs of the lumber company.

There was served on counsel for plaintiff on February 2, 1925, a written notice to produce the original of a contract entered into between J. S. Kent, the receiver of the lumber company, and plaintiff, which was dated November 3, 1921. It does not appear from the notice what the provisions of the contract were nor the purpose for which it was intended to be used, and its relevancy and materiality do not therefore appear. The attorney upon whom the notice was served was called as a witness, and was examined concerning the failure to produce the original contract as required by the notice. From the testimony of this witness it appears that the contract was executed in triplicate, one copy of which was delivered to the plaintiff. This witness testified that he called upon the plaintiff company to produce the contract, and he went through its papers looking for it without finding it, and had not notified counsel for Peppers of his failure to locate it, for the reason that counsel for Peppers had stated that he would prove the contents of the contract if the original were not produced, and counsel for appellee consented that this be done.

If for any reason this contract was relevant and material, there was no reason why the deposition of the receiver, who was known to have a copy, could not have been taken. Moreover, a foundation was laid for the introduction of secondary evidence to prove the contents of this writing, and no objection was made to this being done; in fact, consent was given that this be done.

The failure to produce the original of this instrument does not appear to have been sufficient reason for postponing the trial. Counsel, of course, knew the contract had not been produced, and he should therefore have taken the deposition of the receiver, or should have offered testimony proving the contents of this instrument if, in fact, its contents were relevant and material.

It was insisted below, and the insistence is renewed here, that it was error to permit plaintiff to proceed with the suit against Peppers as a stockholder in the lumber company before its claim was established and adjudicated in the State of California. In other words, it is insisted that, as it was not shown that the affairs of the lumber company had been settled, the suit against a stockholder was premature.

The contract which forms the basis of the suit was to be performed in California, and therefore the laws of that State govern in its construction and in the determination of the rights and liabilities of the parties thereto.

Section 3 of article 12 of the Constitution of California contains the following provisions: "Each stockholder of a corporation * * * shall be individually and personally liable for such proportion of all its debts and liabilities contracted or incurred, during the time he was a stockholder, as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation * * *."

This provision of the Constitution has been frequently construed by the Supreme Court of that State, and the construction by that court of the language quoted is, of course, binding on us. A number of the earlier cases in that State are cited in the case of *Chambers* v. *Farnham,*

182 Cal. 191, 187 P. 732. It is the consistent holding of these cases that a stockholder is primarily liable, and that a creditor is not required to first pursue the corporation before bringing suit against the stockholder. See also *Thomas* v. *Matthiessen*, 232 U. S. 221, 34 S. Ct. 312; *Lanigan* v. *North,* 69 Ark. 62, 63 S. W. 62.

In the case of *Western Pacific Ry. Co. v. Godfrey,* 166 California 346, the plaintiff had made a deposit in a bank which failed. A receiver was appointed, who took charge of the assets and affairs of the bank, and, while the receivership was pending and unsettled, the depositor brought suit against a stockholder in the bank to enforce the proportionate liability of the stockholder under the Constitution of that State. It was held in that case (to quote a syllabus) that "the pendency of receivership proceedings against an insolvent banking corporation does not affect the right of its creditors to proceed against its stockholders in the enforcement of their stockholder's liability."

In the case of *Thomas* v. *Matthiessen, supra,* Mr. Justice Holmes, in construing the provision of the California Constitution quoted and the section of the Civil Code relating thereto, said: "This means that, by force of the statute, if the corporation incurs a debt within the jurisdiction, the stockholder is a party to it and joins in the contract in the proportion of his shares."

It is insisted that the provisions of the California Constitution and of the Civil Code of that State did not apply to the demand here asserted, for the reason that this is an action to recover unliquidated damages for the breach of a contract, the insistence being that the stockholder's liability is limited to actions for debt and does not extend to actions for unliquidated damages for breach of a contract.

We think counsel are mistaken in this contention. The case of *Chambers* v. *Farnham, supra,* was a suit in which the plaintiff claimed damages against a corporation in which the defendant was a stockholder by reason of an alleged breach of a covenant contained in a lease

to certain land for farming purposes delivered by the corporation to the plaintiff. It was insisted, and the court held, that the suit to enforce the stockholder's liability had not been commenced within the time prescribed by the Code of Civil Procedure of that State. But, while the cause of action sued on (a claim for damages) was held to be barred by the statute of limitations, the opinion distinctly recognized the right to maintain a suit of that character. In the opinion by Chief Justice Angelotti it was said: "The *liability* of the corporation to respond in damages for any failure to perform the covenants contained in its contract was necessarily created or incurred by the execution of the contract, notwithstanding that no right of action could accrue until a breach." It was there also said: "As said in *Coulter Dry Goods Co. v. Wentworth, supra* (see 171 Cal. 510, 153 Pac. 493), *when the corporation* made its contract with the plaintiffs, it *'incurred a liability for any breach of the contract which it might commit,* and its stockholders were equally liable for such breach. The stockholders *who were such when the contract was made* are therefore bound under the Constitution, which holds them for the 'liability' incurred by the corporation during the time that they were stockholders.'"

It is also insisted that the testimony did not show the amount of the capital stock owned by Peppers, and for this reason the judgment against him was excessive. There was offered in evidence a certified copy of the articles of incorporation of the lumber company, from which it appeared that the capital stock of that company was $1,000,000, and in the seventh section of these articles it was recited that the amount of said capital stock which had been actually subscribed is $5, and the names of the five subscribers were given, each for one share of stock at $1.

It appears, however, that the complaint contained the following allegation: "Plaintiff further alleges that the defendant T. H. Peppers was a large stockholder in the Peppers-Cotton Lumber Company at the time the

transactions complained of occurred, holding $400,000 par value of its stock, and the total subscribed stock of said corporation was $600,000.''

The answer admitted that the lumber company had been declared a bankrupt, and denied that appellant owned any stock therein in any amount, but did not deny that the total subscribed stock of the lumber company at the time of the transaction between the parties to the suit was $600,000. The undenied allegation that the capital stock was $600,000 is conclusive of that question. Besides, the undisputed testimony shows that the lumber company was in the possession of assets of very great value, which could not, of course, have been acquired with $5 of capital. Moreover, the deposition of C. A. Cotton, who was a vice-president and active manager of the lumber company, was taken, and introduced at the trial. Cotton testified that, after the charter was issued, Peppers owned $300,000 of the capital stock, and that he later bought from his father $100,000 of the stock which had been issued to Peppers' father. The testimony of Cotton, who testified that Peppers had himself stated to witness the amount of stock owned by Peppers, placed the ownership of all this stock as of the 6th, 7th or 8th of September, 1921, which was the year during which the contract was to be performed.

Appellant insists that this testimony was not competent to prove the amount of stock owned by Peppers, as that fact could be shown only by the stock-book of the lumber company.

The case of *Shean* v. *Cook*, 180 Cal. 92, 179 P. 185, is against this contention, it being there held that it is the actual, and not the ostensible, owner of the stock who is liable. In the case just cited the first syllabus reads: "A stockholder of a corporation, within the meaning of article 12, § 3, of the Constitution, declaring stockholders' liability, is one who owns shares in a corporation which has a capital stock, being so defined in § 298 of the Civil Code, which was in effect at the time of the adoption of the constitutional provision, and the Legislature, in

providing in § 322 of the Civil Code that the term 'stock-holder' applies not only to such person as appears upon the books of the corporation to be such, but also to every equitable owner of stock, although the same appears on the books in the name of another * * *."

We conclude therefore that the jury was warranted in finding that appellant owned, not one share, but $400,000 of the capital stock, which was $600,000, and was therefore liable for two-thirds of the damages which appellee was shown to have sustained.

It is finally insisted for the reversal of the judgment of the court below that the testimony does not sustain the verdict for the amount of damages assessed by the jury.

The lumber company contracted to deliver to appellee "the entire cut of lumber two shop and better, white and sugar pine, for the season 1921, estimated at six million feet." Mr. Cotton, who, as we have said, was a vice-president and active manager of the lumber company, testified concerning the output of the mill, and his testimony fully supports the finding that the output would have equaled or exceeded the estimate contained in the contract if the lumber company had operated the mill as it had contracted to do.

The testimony on the part of appellee showed a rapid rise in the price of lumber, and, according to the testimony offered on behalf of appellee in this respect, a loss of $80,000 was sustained by the non-delivery of the lumber. This is a much larger sum than was found by the jury, the verdict returned being for the sum of $25,012. At any rate, we think the testimony supports the finding for the damages returned.

Error was assigned in submitting to the jury as an element of damages certain loading charges; but there was no error in this, as the contract, after stating the prices to be paid, specifies the "prices f. o. b. cars, Macdoel, California, net." If appellee was compelled to incur an expense which the contract required the lumber company to discharge, the payment of this expense

was a proper element of damage to be considered by the jury.

What we have just said about loading lumber is equally applicable to the assignment of error in regard to surfacing certain portions of the lumber. The contract gave appellee the right to direct that certain parts of the lumber be surfaced by the lumber company, for which an additional price of $5 per thousand was to be paid. This service was not performed by the lumber company, but was done by appellee at a necessary cost to it of more than $5 per thousand. This excess was therefore also a recoverable element of damage.

Upon a consideration of the whole record we find no reversible error, and the judgment of the court below is affirmed.