## BRU v. WHITE.

### No. 7396.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1935.

Russell P. Tyler, of San Francisco, Cal., for appellant.

Arthur T. La Prade, Atty. Gen., and Riney B. Salmon, Asst. Atty. Gen., C. A. Lindeman, of Los Angeles, Cal., and R. N. Campbell, of Yuma, Ariz., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This action is based on stockholder's liability arising out of ownership of stock in the insolvent Yuma Valley Bank, a banking corporation organized and existing under and by virtue of the laws of the state of Arizona. Howard H. Bru, the defendant stockholder, appealed from a judgment entered against him in the District Court for the amount of an assessment levied on 400 shares of stock of the Yuma Valley Bank, assertedly owned by him. Mary E. Bru, as special administratrix of the estate of said Howard H. Bru, has since been substituted as the appellant herein.

The complaint alleges that the Yuma Valley Bank became insolvent on and before June 20, 1930; that plaintiff, James B. Button (appellee's predecessor in office), superintendent of banks of the state of Arizona and receiver of said Yuma Valley Bank, proceeded to liquidate the assets of said bank for the benefit of the creditors thereof, and levied a 100 per cent. assessment on the capital stock of said bank; that on June 20, 1930, defendant, Howard H. Bru, was the owner of 400 shares of the capital stock of said bank, of the par value of $25 per share, represented by stock certificate No. 6; that said 400 shares of stock were carried on the books of the Yuma Valley Bank in the name of Citizens' National Trust & Savings Bank of Los Angeles, as pledgee for John S. Cook, W. D. Fisk, Bert Caudry, and A. W. Crawford, but that prior to June 20, 1930, the defendant had purchased said 400 shares of stock from said pledgors and that, on June 20, 1930, the Citizens' National Trust & Savings Bank was holding the said stock as pledgee for the defendant; that an assessment of $10,000, representing defendant's indebtedness to the bank by reason of his stockholder's liability, was levied by plaintiff; that demand for payment of said assessment was made and refused, and for which amount plaintiff prayed judgment, with interest.

Defendant Bru's answer denied ownership of the said 400 shares of stock, but admitted a prior agreement to purchase the same from the pledgors above named, at $31.25 per share.

After trial before the court, without a jury, judgment was entered against defendant for the amount of the assessment levied on the stock, with interest.

The assignments of error present two principal questions, stated by appellant to be:

(1) Does the evidence establish that the said Howard H. Bru was a stockholder of the Yuma Valley Bank?

(2) Is there any evidence sufficient to establish the amount of the liability of the said Howard H. Bru?

We are satisfied that the trial judge correctly decided Bru was liable as a stockholder of the Yuma Valley Bank at the time the bank became insolvent. There is no conflict in the evidence, as defendant offered none. The evidence as to Bru's ownership of the 400 shares of stock may be summarized as follows: While the said stock stood in the name of Citizens' National Trust & Savings Bank, as pledgee for Cook, Fisk, Caudry, and Crawford (being held as collateral security for a $12,500 note, dated May 20, 1929), the stock was sold by the four pledgors to Bru for $12,500. Bru paid the principal sum of $2,500 on account thereof, and gave the Citizens' National Bank his note, dated July 18, 1929, for the unpaid balance of $10,000, whereupon the note of the original pledgors was canceled. Bru pledged the 400 shares of stock in question as security for his note. He also gave the Citizens' National Bank a financial statement, listing among his assets the same 400 shares of stock. From time to time thereafter, Bru made payments of principal and interest on the note, and gave several renewal notes for the unpaid balances, each renewal note being secured by the same stock.

The stock certificate in question recites on its face that it is "transferable only on the books of the Corporation by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed." The certificate remained at all times in the name of the Citizens' National Bank as pledgee for the persons from whom Bru had purchased the stock. The pledgee retained possession of it, and it was not surrendered to the Yuma Valley Bank for transfer of ownership; nor was it transferred to Bru's name on the corporate books. Section 584 of the Revised Code of Arizona provides that a "transfer of stock shall not be valid, except as between the parties thereto, until the same is entered upon the books of the corporation," etc. It is contended, therefore, that the transfer of the stock was only valid as between Bru and his vendors, and that, so far as stockholder's liability is concerned, Bru was not the owner of the stock, because it was never transferred to his name on the books of the Yuma Valley Bank. This argument is untenable.

"A statutory provision that no transfer shall be valid, except as between the parties, until entered on the corporate books, is for the benefit of the corporation and its creditors and may be waived by the corporation itself." Thompson on Corporations (3d Ed.) vol. 6, § 4336, p. 198. And see Fletcher's Cyclopedia of Private Corporations, vol. 6, § 3789, pp. 6317, 6318.

The same doctrine was recognized by the Supreme Court of Arizona in Johnson v. Moore, 31 Ariz. 137, 250 P. 995, 997, 998, where the court said: "So far as we are able to determine, it has been almost universally held that such provisions [as section 584, supra], whether statutory or otherwise, are intended for the benefit and protection of the corporation and its creditors, and that the corporation may waive a compliance therewith."

■ The failure or omission of Bru to have the stock registered in his name on the books of the Yuma Valley Bank did not operate to release him of his stockholder's liability. "The owner is liable if the stock has been issued or transferred though it has not been registered in his name." Thompson on Corporations (3d Ed.) vol. 6, § 4894, p. 791. Stockholder's liability is predicated on true ownership of the stock. Shean v. Cook, 180 Cal. 92, 179 P. 185, 5 A. L. R. 1042. Bru was the real owner at the time the assessment was levied, although the certificate was still in the name of the pledgee of his vendors and Bru's name had not been recorded on the corporate books as the owner of the stock. In Early v. Richardson, 280 U. S. 496, 499, 50 S. Ct. 176, 177, 74 L. Ed. 575, 69 A. L. R. 658, the Supreme Court said: "That the actual owner of the stock may be held for the assessment, although his name does not appear upon the transfer books of the bank, is well settled. Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 167, 168, 27 S. Ct. 179, 51 L. Ed. 423; Davis v. Stevens, 17 Blatchf. 259, 7 Fed. Cas. 177, 178 (No. 3,653); Case v. Small [C. C.] 10 F. 722, 724; Houghton v. Hubbell [C. C. A.] 91 F. 453."

■ It is next contended that the stockholder's liability imposed by section 11, article 14, of the Constitution of Arizona, and by section 227 of the Revised Code of that state, "refers to debts incurred during the time that a party was a stockholder of said corporation," and it is argued that the evidence in this case "fails to disclose whether all or any of the debts of the Yuma Valley Bank were incurred at a time that it is alleged and

claimed that the said Howard H. Bru was a stockholder of that institution." However, the constitutional and statutory provisions referred to do not admit of the construction placed thereon by appellant, and there is therefore no justification for the argument that the liability of a stockholder extends only to debts incurred during the time he was a stockholder. On the contrary, the Supreme Court of Arizona has said that these provisions are a part of a stockholder's contract, "and he thereby agrees to the extent of the amount of his stock to be responsible to the creditors of the bank for all its contracts, debts and engagements." Colman v. Button (Ariz.) 22 P.(2d) 1078, 1079. A purchaser of stock in a bank organized under the laws of Arizona assumes the double liability imposed on the bank's shareholders by the Arizona Constitution. Washington Loan & Trust Co. v. Allman, 63 App. D. C. 116, 70 F.(2d) 282.

Moreover, as was observed by the Supreme Court of Arizona in Colman v. Button, supra, the constitutional and statutory provisions referred to contain almost the identical language found in section 5151 of the Revised Statutes (12 USCA § 63), relating to liability of stockholders in national banks, and under the latter law it has uniformly been held that the liability of a stockholder is not limited to debts incurred during the time he was a stockholder. See Anderson v. Cronkleton (C. C. A. 8) 32 F.(2d) 170, 173, where the court held the stockholders liable for debts incurred before they became stockholders.

The California cases cited by appellant have no application because they are based on section 322 of the Civil Code of California, as it then read, subjecting a stockholder to "debts and liabilities contracted or incurred during the time he was a stockholder."

It is also contended that the court erred in allowing the substitution of appellee, Y. C. White, as plaintiff in place of James B. Button, his predecessor in office, because there was no showing that the appointment of Button by the Governor of Arizona, to the office of state superintendent of banks, was ever confirmed by the Senate of that state. It appears, however, that the appointment of Button was an ad interim appointment, and that he was acting as superintendent of banks when the complaint was filed. It is immaterial whether he was a de jure or de facto officer. Appellee White was duly appointed and confirmed and was acting as superintendent of banks at the time of the trial. He was therefore the proper party plaintiff, and the court did not err in allowing the substitution.

Affirmed.